NORTHWESTERN COOPERAGE & LUMBER CO. v. BYERS.

CONTRACTS—ASSIGNABILITY.

Defendants entered into a contract with a corporation, whereby the latter agreed to erect a stave factory at a certain place, to operate it as long as the timber supply might warrant, not to buy or pay for its timber through any one merchant, and not to own or be in any way connected with a store or boarding house. Defendants were to furnish and lease free a site for the factory for the period of 10 years, to save the corporation harmless from all taxes assessed against the site, factory, and products during said period, and to

deliver free, within a short time, a certain quantity of timber. In case the corporation should not operate its factory for 12 months, it was to pay all taxes assessed against its property during the time the factory was not in operation; and the lease was renewable at the option of the corporation, "its successors or assigns." *Held,* that the contract was assignable by the corporation.

Error to Iron; Stone, J.  Submitted June 2, 1903. (Docket No. 2.)   Decided June 23, 1903.

*Assumpsit* by the Northwestern Cooperage & Lumber Company against Isaac W. Byers and others on a contract of indemnity against taxation.  From a judgment for plaintiff, defendants bring error.   Affirmed.

*Cook & Pelham*, for appellants.

*F. D. Mead* ( *R. C. Flannigan*, of counsel ), for appellee.

MOORE, J.   This suit was commenced by declaration, to which the defendants demurred.  The circuit judge overruled the demurrer, and entered a judgment in favor of the plaintiff.   The defendants bring the case here by writ of error.

August 26, 1897, the defendants entered into an agreement with the Buckeye Stave Company.  The first part of the agreement provided for the erection of a stave mill at or near Iron River, Mich., to be operated as long as the supply of timber lasts.   The portions of the contract material to this issue read as follows:

" That in consideration of the obligations of the Buckeye Stave Company, as above set forth, the undersigned business men, farmers, taxpayers, and residents of Iron River township, Iron county, Michigan, agree that they will furnish and lease the said Buckeye Stave Company the site free already selected by them of from twelve to fourteen acres, level and graded suitable for yard and mill purposes, for their said factory, landing of logs, piling of products, and offices of said factory, for the period of ten years from

the date hereof, with the privilege of renewing the lease at the expiration of the said ten years for a period of years as long thereafter as said Buckeye Stave Company, their successors or assigns, may use the said mill site for manufacturing purposes, on the same terms and conditions, except that said Buckeye Stave Company, their successors or assigns, shall pay all the taxes assessed against said mill site and property thereon; and further agree that they will save free and harmless said Buckeye Stave Company from all taxes, ordinary and extraordinary, which may be assessed against the factory, buildings, machinery, logs, and manufactured products, and the mill site of said Buckeye Stave Company in the township of Iron River, Iron county, Michigan, during the ten years next ensuing from the date of this agreement; and they further agree that they will deliver free on or before the first day of April, A. D. 1898, at the factory aforesaid of said company, one hundred and fifty thousand feet of merchantable elm logs or their equivalent."

On the 18th of December, 1898, the Buckeye Stave Company assigned this contract to the plaintiff, which last-named company did what the Buckeye Stave Company had agreed in the contract to do. The defendants did not pay the taxes of 1900. Property of the plaintiff was levied upon to satisfy said tax, when plaintiff paid it under protest, and this suit is brought to recover the amount thereof.

The questions involved are so clearly stated by the trial judge in a written opinion filed by him, that we quote therefrom:

"The ground of the demurrer is, 'For the reason that the contract set forth in said count is personal in its nature, and not assignable, and that the pretended assignment thereof to said plaintiff could not confer any rights whatever upon said plaintiff.'

"I have carefully examined the contract, as well as the authorities cited upon the hearing and in the plaintiff's brief, most of which are referred to in 2 Am. & Eng. Enc. Law (2d Ed.), pp. 1034–1037, and notes. I am unable to agree with defendants' position, and am of the opinion that the demurrer should be overruled. Whether the instrument is treated as a lease, an agreement for a

lease, or a simple executory contract, the conclusion must, it seems to me, be the same.   The rule is well stated in Bishop, Cont. § 1182:

"'Not every sort of contract is in its nature assignable.  For example, an agreement involving a personal trust in the party, or to be carried out by his personal skill, cannot be so assigned as to compel the other party to accept performance by the assignee, and pay him therefor.  A familiar illustration whereof is that a master cannot validly assign over his apprentice.  But the right to perform an agreement, and receive the money to be earned thereby, is, when not within this principle of personal confidence, assignable. *Devlin* v. *Mayor, etc., of New York*, 63 N. Y. 8; *Tugman* v. *Steamship Co.*, 76 N. Y. 207.  Of this a common illustration is a building contract.  And, in general terms, a perfected claim to anything, whether money or goods, may be so assigned as to vest in the assignee the equitable interest, or, in some of the States, the legal.'

"To the same effect, 1 Pars. Cont. *p. 223 *et seq.*, and notes.

"In this case the Buckeye Stave Company agreed with the defendants that it would, on or before the 1st day of January, 1898, erect, or have in process of erection, in or near Iron River, Michigan, and operate thereafter so long as the supply of timber may warrant, a stave and heading factory.  It further agreed that it would not buy, or pay therefor, the logs or timber necessary to supply said factory, through any one merchant or business man in the township or village of Iron River; that it would not own, operate, control, or be in any way connected with, a store or boarding house in or near Iron River; and that it would, in case it did not operate the said factory for 12 months, pay all taxes which might be assessed against it on its property during the time in which said factory was not in operation.

"As was said in *Devlin* v. *Mayor, etc., of New York*, *supra*, the contract was not purely personal, in the sense that the company was to perform in person.  The things which the company agreed to do or have done were all to be done before the parties of the other part were to pay or save harmless the taxes.  In this respect it might be said that its undertakings were conditions precedent to any expenditure by the other party.  The company's failure to perform in advance would be a good defense for the other party, and the same may be said of its assignee, the plaintiff.  The taxes, in the sense of the authorities, were to be

earned before there was any obligation on the part of the defendants to pay or indemnify. The principle, it seems to me, is the same as though goods were to be paid for on delivery. I cannot see that the question of the responsibility or solvency of the Buckeye Stave Company was involved. Nor can it be said that the personal performance by the Buckeye Stave Company could have been contemplated by the parties at the time this contract was made. It was a corporation, and must work through its agents, servants, and officers. The work, of necessity, required the labor and attention of a number of men; and it does not appear that, because of the company's knowledge, experience, or pecuniary ability, or for any other reason, it was especially fitted to carry it on. There was nothing of a personal nature about it, and a personal performance by it was not the inducement nor the essence of the contract. *Galey* v. *Mellon*, 172 Pa. St. 443 (33 Atl. 560).

"If the contract be personal, and the performance of the party himself be the essence thereof, it neither devolves upon his representatives, nor can it be assigned. Had the Buckeye Stave Company been a natural person, is there any doubt that, in case of death, the contract would have devolved upon the representative? I think not. I think that the true doctrine is that where an executory contract is not necessarily personal in its character, and can, consistent with the rights and interests of the adverse party, be fairly and sufficiently executed as well by an assignee as by the original contractor, and when the latter has not disqualified himself from a performance of the contract, it is assignable.

"It seems to me that the case of *Arkansas Valley Smelting Co.* v. *Belden Min. Co.*, 127 U. S. 379 (8 Sup. Ct. 1308), can be readily distinguished from the case at bar. That case was one for the delivery of ore to the assignor of the plaintiff. The price was not fixed by the contract, nor payable upon the delivery of the ore. The vendee selected the sample and made the assay, and, during the time between which the ore was delivered and the ascertainment and the payment of the price, the vendor had no security for its payment, except in the character and solvency of the vendee. The court held that the defendant could not, therefore, be compelled to accept the liability of any other person or corporation as a substitute for the liability of those with whom it had contracted. But the courts uniformly hold that where goods are to be

sold and delivered, and paid for on delivery, the vendee may assign the contract, where nothing remains to be done by him but the payment of money. *Delaware County Com'rs* v. *Diebold Safe & Lock Co.*, 133 U. S. 473 (10 Sup. Ct. 399)."

Counsel for defendants, in support of the claim that this contract was not assignable, cite *Globe & Rutgers Fire-Ins. Co.* v. *Jones*, 129 Mich. 664 (89 N. W. 580). We think that case is not in point. The question involved there was whether an employé could be compelled to perform services for a different employer than the one with whom he made his contract, and it was held he could not. See 2 Am. & Eng. Enc. Law (2d Ed.), p. 1037, notes, and cases cited therein. The learned circuit judge so clearly stated the principles of law involved that we content ourselves by citing *Himrod Furnace Co.* v. *Railroad Co.*, 22 Ohio St. 451, and by suggesting that the contract itself contemplated it might be assigned, by providing for a renewal of the lease "for a period of years as long thereafter as said Buckeye Stave Company, their successors or assigns, may use the said mill site," etc.

Judgment is affirmed.

The other Justices concurred.