DETROIT, TOLEDO & IRONTON RAILROAD CO. *v.* WESTERN UNION TELEGRAPH CO.

1. CONTRACTS—ASSIGNMENTS—PERSONAL CHARACTER.

An executory contract between a railway company and a telegraph company to jointly construct, maintain, and operate a telegraph line along the railroad right of way for a term of years, was not necessarily personal in its character and could, consistent with the rights of the telegraph company, be assigned by the railway company to its successor and be by it specifically enforced.

2. SAME — INSOLVENCY — LACK OF MUTUALITY — TERMINATION OF CONTRACT.

Where plaintiff went into possession of the railway prop-

erty, which was sold under foreclosure proceeding in the Federal court, and began to operate it with the aid of the telegraphic system, promptly electing to be bound by the terms of said contract, there was no lack of mutuality, although the Federal court gave plaintiff 90 days in which to disavow any contract of its predecessor.

3. SAME — INSOLVENCY — LACK OF MUTUALITY — TERMINATION OF CONTRACT—ESTOPPEL.

It would be inequitable to permit defendant to terminate said contract on the ground of lack of mutuality because of the insolvency of plaintiff's predecessor, and its passing into the hands of a receiver, where said question was not raised during the six years of the receivership, and not until after the mutuality had been restored by the substitution of a responsible party.

4. MORTGAGES—FORECLOSURE—CONTRACT RIGHTS.

Rights in property which are acquired subsequent to the attaching of a mortgage lien are extinguished by the foreclosure and sale of the mortgaged property; there being no privity of contract between the holder of the rights subsequently acquired and the purchaser.

5. CONTRACTS—SALE OF ASSETS—TRANSFER OF CONTRACT RIGHTS.

Where the decree of the Federal court contemplated that the interest of the mortgagee, the receiver, and the railway company should pass to the purchaser, and in pursuance thereof the transfers were executed by the master in chancery, the receiver, and the mortgagor railway company, the rights of said railway company in said contract which had passed to the receiver, were transferred to plaintiff, and are enforceable by a court of equity.

Appeal from Wayne; Sullivan, J., presiding. Submitted June 18, 1917. (Docket No. 38.) Decided February 19, 1918.

Bill by the Detroit, Toledo & Ironton Railroad Company against the Western Union Telegraph Company for the specific performance of a contract. From a decree for plaintiff, defendant appeals. Affirmed.

*Stevenson, Carpenter, Butzel & Backus* (*Samuel R. Williams,* of counsel), for plaintiff.

*Corliss, Leete & Moody* (*Albert T. Benedict*, of counsel), for defendant.

BIRD, J. The Detroit, Toledo & Ironton Rail*way* Company, the predecessor of plaintiff, entered into a contract with defendant on the 29th day of August, 1906, which had for its object the construction, maintenance, and operation of a telegraph line along the right of way of the railway extending from the city of Detroit to Ironton on the Ohio river. In substance, this contract required the defendant telegraph company to furnish the poles, wire, and other materials for the construction of the line, and a foreman to direct its construction. It made it incumbent on the railway company to grant an easement over its right of way for the line, and to furnish the labor to construct, maintain, and operate the same, and to furnish office room at the several stations in which to operate the system. The contract is specific as to what each party shall furnish, pay for and receive, but we think it unnecessary to recite them in detail. The contract was to continue for a period of 25 years and longer unless one of the parties gave notice to terminate it. In pursuance of this contract the work was done and the line operated. So far as the record shows the parties worked in harmony under the contract, and the railway expended upwards of $20,000 in discharging its obligations thereunder. In the year 1908 the railway found its way into the hands of a receiver by reason of the foreclosure of certain mortgages on its property. The receivership lasted about six years, during which time the receiver operated the railway and telegraph system and discharged the contract obligations of the railway company. At the expiration of this period the property was sold under the direction of the Federal court and purchased by plaintiff in March, 1914. Soon after taking possession thereof

plaintiff was notified by defendant that it elected to terminate the contract on account of the foreclosure proceedings, and threatened to discontinue service and remove its line. To prevent defendant from carrying its threats into execution plaintiff filed this bill. At the hearing on the merits the trial court granted the relief prayed for in the bill, and defendant has appealed.

Plaintiff takes the position that the contract was a valid one, that the Detroit, Toledo & Ironton Railway Company had an enforceable interest therein, and that, having assigned that interest to plaintiff, it can now be enforced in its behalf. The defendant contends that the contract was not assignable, that when plaintiff took possession of the railroad property by virtue of the foreclosure proceedings, the contract was at an end and afterward neither party could enforce it against the other. These contentions appear to raise the following questions:

(1) Was the contract assignable?

(2) Was the contract assigned?

1. The test of the assignability of an executory contract is laid down in *Northwestern Cooperage & Lumber Co.* v. *Byers,* 133 Mich. 534, as follows:

"That where an executory contract is not necessarily personal in its character, and can, consistent with the rights and interests of the adverse party, be fairly and sufficiently executed as well by the assignee as by the original contractor, and when the latter has not disqualified himself for the performance of the contract, it is assignable."

This rule was followed in the recent cases of *Voigt* v. *Heating Co.,* 164 Mich. 539, and the *C. H. Little Co.* v. *Transit Co.,* 197 Mich. 481.

Applying this test to the contract under consideration, we find no difficulty in concluding that it falls within the class of contracts which are assignable.

The so-called personal element which enters into it is very small. It is hardly conceivable that the particular corporation which happened to own the railway property at the time, or the personnel of its official force, influenced the defendant in any great degree to enter into the contract. We think it was rather the fact that the company owned a line of railway, had a right of way which extended from the city of Detroit to the Ohio river, and the density of population and traffic through which it passed, that moved the defendant to make the contract. It is difficult to suggest any reason why it should have refrained from entering into the contract had some other railway corporation owned the property. The contract was made to supply an essential element in the operation of the railroad and to aid defendant in extending its commercial telegraphic service into new territory. Counsel say that the personal element manifests itself in that part of the contract which makes the employees of the railway custodian of the funds received for the transmission of commercial messages. While a custodian of money involves a position of trust, and ordinarily would indicate a selection based on the honesty and responsibility of the custodian, it is not of much force in the present case as the contract does not appear to have been made by defendant with reference to any particular employee or employees who had been or would be employed by the railway company. It had reference to the railway employees generally whose positions were subject to change. We think the contract was one which could be complied with as well by plaintiff as by its grantor because it had title to the railway property and therefore had it within its power to comply with its terms.

While the railway company became unable to carry out its contract on account of insolvency, its obligations thereunder appear to have been discharged by

the receiver and no attempt was made by defendant to put an end to the contract during the period of receivership, nor did defendant attempt to take advantage of any right it may have had to terminate the contract until after the sale and the property had passed into the possession of plaintiff, a responsible party, against which the contract could be enforced. But it is argued that because the decree of the Federal court gave plaintiff 90 days in which to disavow contracts made by its predecessor, a period was thereby created in which defendant could not have enforced the contract, and in consequence thereof its mutuality passed out of it. While the decree gave to plaintiff this privilege it did not exercise it after the position of defendant was called to its attention, but instead it promptly elected to be bound by the terms of the contract. We think it is not going too far to hold that when plaintiff went into possession of the railway property and began to operate it with the aid of the telegraphic system without which aid it could not have been operated, it thereby elected to be bound by the contract. But aside from this consideration, it would be inequitable to permit defendant to avoid the contract because of a lack of mutuality when it did not raise the question until after its mutuality had been restored by the substitution of a responsible party.

2. Did the railway's interest in the contract pass to plaintiff? The contract with plaintiff's predecessor was made subsequent to the mortgages which underwent foreclosure. We do not understand that it is contended that the rights of the railway in its contract were covered by the lien of the mortgages as after-acquired property. The decree of the Federal court providing for the sale and transfer, as well as the deeds and bills of sale transferring the same, contemplated that the interest of the mortgagee, of the

receiver, and of the railway company should pass to the purchaser, and in pursuance of the request of the purchasers the transfers were executed by the master in chancery, by the mortgagees, by the receiver, and by the mortgagor railway company. If the railway's interest in the contract was not covered by the mortgage it must have been an asset of the company which passed to the custody of the receiver and from him and the railway company to plaintiff under the deeds and bills of sale. But defendant contends that there was nothing to transfer, that the contract rights were extinguished by the foreclosure sale of the property, and in support of this contention much reliance is placed upon the case of *Western Union Telegraph Co.* v. *Ann Arbor R. Co.*, 90 Fed. 379. This case was afterwards reversed by the Supreme Court on jurisdictional grounds (178 U. S. 239). But we think the opinion of the court of appeals may be accepted as good law. It goes no farther than to restate the rule that rights in property which are acquired subsequent to the attaching of a mortgage lien are extinguished by the foreclosure and sale of the mortgaged property, the reason being that there is no privity of contract between the holder of the rights subsequently acquired and the purchaser. Had plaintiff's interest in the property been confined to the interest of the mortgagees which it acquired as purchaser at the foreclosure sale, the case would then be the same as the one cited. But the plaintiff acquired something in addition to that interest. It acquired the railway's interest in the contract. Having thus acquired the mortgagee's interest in the property and the railway's interest in the contract, it stood in the same relation to the contract that its predecessor did. It seems to me that plaintiff was in the same position as though it had, before the receivership, purchased the interest of the mortgagees and the interest of the railway

company. Had it done so, under our view that the contract is assignable, it cannot be questioned that plaintiff would have had an enforceable interest in the contract. Suppose the position of the parties were reversed and plaintiff was attempting to terminate the contract after having taken an assignment thereof from the railway company and after having purchased the railway property at the mortgage sale, and entered upon the operation of the railway property and telegraphic system, could the railway company succeed in its attempt by claiming it was not bound by the contract? We think not. Our conclusion is that plaintiff has an enforceable interest in the contract which was properly enforced by the decree of the trial court.

The decree will be affirmed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.