The BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY, Plaintiff,

v.

RESEARCH CORPORATION and Research Corporation Technologies, Inc., Defendants.

File No. 5:95–CV–51.

United States District Court, W.D. Michigan.

Aug. 10, 1995.

**520**

John C. Shea, Miller, Canfield, Paddock & Stone, Detroit, MI, for Bd. of Trustees of Michigan State University, plaintiff.

Robert J. Jonker, Warner, Norcross & Judd, Grand Rapids, MI, for Research Corporation Technologies, Inc., Defendant.

*OPINION*

BENJAMIN F. GIBSON, District Judge.

This is a contract action by Michigan State University (MSU) against Research Corporation (RC) and Research Corporation Technol-

ogies (RCT). MSU alleges breach of contract, injunction, reformation, accounting, unjust enrichment, and interference with contractual relations. Before the Court is defendants' motion to stay the action and compel arbitration in accordance with the contract's arbitration clause.

## I.

MSU contracted with RC in 1950 to patent and otherwise commercially exploit inventions of the MSU faculty. The 1950 contract (the Contract) recited the nonprofit character of RC and its interest in promoting science and technology, including devoting a portion of its revenues from the subject inventions to scientific research projects. In the Contract, MSU essentially transferred its interests in the inventions of its faculty to RC, subject to other agreements between RC and the actual inventors. RC agreed to prosecute patents for the inventions and then license or otherwise develop the invention and technology for public and to "secure a reasonable revenue." Under the Contract, MSU and RC divide the proceeds resulting from the patenting, licensing, and other exploitation of the inventions.

In 1987, purportedly to realize certain benefits of the Tax Reform Act of 1986, RC formed a nonprofit and nonstock subsidiary, RCT. RC then assigned essentially all of its rights under the Contract to RCT. RCT subsequently acted in place of RC for purposes of administering the Contract. From the documents submitted to the Court, MSU appears to have dealt with RCT as though it were dealing with RC. The relationship was substantial; during the term of the contract approximately $80 million was paid to MSU and $88 million to members of its faculty.

Subsequently, on March 10, 1995, MSU notified RCT, not RC, that the Contract would be terminated upon 90 days notice as provided under the terms of the contract. See Munsinger Declaration, ¶ 7, and Tabs 4 and 5. The parties then began to negotiate their post-termination rights and obligations. However, on March 14, 1995, RCT commenced an arbitration proceeding before the American Arbitration Association (AAA), pursuant to paragraph V(1) of the Contract,

to resolve the dispute as to the post termination rights.

On April 14, 1995, MSU filed this action, moved for a temporary restraining order, a show cause order, and a preliminary injunction to prohibit the arbitration. RC and RCT then moved to stay this action pending arbitration before the AAA. On May 10, 1995, the parties agreed to stay arbitration pending resolution of the current motion to stay this action pending arbitration.

## II.

■■■ Federal law favors arbitration where the parties have agreed to it and construes arbitration clauses liberally in favor of arbitrability. *Mitsubishi Motors Corp. v. Soler, Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); Federal Arbitration Act, Title 9 United States Code Sections 1 *et seq.* In *Cone Memorial,* the Court stated, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." 460 U.S. at 24–25, 103 S.Ct. at 941. In *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), the Court held that the Arbitration Act required the district court to compel arbitration of pendant arbitrable claims. In determining arbitrability, courts need only decide whether: (1) the parties agreed to arbitrate, and (2) the scope of the arbitration agreement. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2nd Cir.1993).

### A.

■ The scope of the Contract's arbitration provision is extensive. It provides:

Any controversy or claim arising out of or relating to this agreement or the breach thereof, shall be settled by arbitration, in accordance with the Rules, then obtaining, of the American Arbitration Association, and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction. Contract, ¶ V(1).

Courts broadly construe this type of language to include all disputes originating out of the contract, including interpretation of the contract, and also a broad range of technically noncontractual claims, including recision, fraud, misrepresentation, intentional interference with contract, and contribution. *Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l Ltd,* 1 F.3d 639, 642 (7th Cir. 1993); *Acevedo Maldonado v. PPG Indus., Inc.,* 514 F.2d 614, 616 (1st Cir.1975). Accordingly, this Court determines that MSU's claims in this action are within the scope of the Contract's arbitration provision.

### B.

The arbitration agreement also appears to be both valid and enforceable. The Court finds nothing in the arbitration provision itself that would invalidate it or render it unenforceable. Similarly, the Court finds nothing in the assignment of the Contract from RC to RCT that would invalidate it or render it nonenforceable.

■■ The Court recognizes MSU's arguments as to the invalidity of the assignment from RC to RCT, but is not persuaded. MSU argues that RC and RCT must prove a valid assignment from RC to RCT in order to prevail on their motion to compel arbitration, relying on *I.S. Joseph Co. v. Michigan Sugar Company,* 803 F.2d 396, 400 (8th Cir.1986). MSU then contends that the assignment of the Contract from RC to RCT was not valid because the Contract was not assignable. However, under Michigan law, the general rule is that contracts are freely assignable. *Detroit T. & I.R. Co. v. Western U. Tel. Co.,* 200 Mich. 2, 7, 166 N.W. 494, *cert. denied,* 247 U.S. 517, 38 S.Ct. 581, 62 L.Ed. 1245 (1918). Further, by its terms, the Contract did not prohibit its assignment. Therefore, unless an exception exists, the assignment of the Contract from RC to RCT should be valid and enforceable.

■ MSU asserts that the Contract is a *personal* contract, which is an exception to

the general rule of free assignability of contracts. *Northwestern Cooperage & Lumber Co. v. Byers,* 133 Mich. 534, 537, 95 N.W. 529 (1903). Personal contracts are those involving a personal trust in a party or the special skills and knowledge of a particular individual or group of individuals. *Detroit Postage Stamp Service Co. v. Schermack,* 179 Mich. 266, 146 N.W. 144 (1914); *Edison v. Babka,* 111 Mich. 235, 238, 69 N.W. 499 (1896); *Delaware County Comm'rs v. Diebold Safe & Lock Co.,* 133 U.S. 473, 10 S.Ct. 399, 33 L.Ed. 674 (1890). MSU contends that a corporate contract can be considered a personal contract recognizing the corporation's charter as its "personal character." *New York Bank Note Co. v. Hamilton Bank Note Engraving & Printing Co.,* 180 N.Y. 280, 73 N.E. 48 (1905). MSU recounts that the Contract contemplates a philanthropic entity dedicated to the advancement of scientific and technical research and obligated by the terms of its charter to donate its revenues to that end. MSU argues that RC, by its corporate nature, cannot fulfill these contractual obligations and concludes that the Contract is not assignable.

The Court is not persuaded. The Contract is a contract between corporate entities, does not specify any particular individuals, and is of indefinite duration reflecting that no particular persons were specified as essential to the Contract. Further, the Contract's reference to RC's special charter provisions benefitting scientific research do not convert it into a nonassignable personal contract. Other similarly chartered corporations would possess the same "personal character." Moreover, even recognizing the differences between the respective charters of RC and RCT, under the assignment, RCT is obligated to fulfill RC's obligations to MSU.[1]

■ The Court also finds that, even if the contract were nonassignable, MSU ratified the assignment by its conduct. Several of the documents submitted in support of defendants' motion clearly reflect both explicit disclosure of the assignment to MSU and ratification of the assignment by MSU's continued performance under the Contract, even after it received notice of the assignment. MSU's conduct included accepting payments from RCT's administration of the inventions and otherwise treating RCT as though it were a party to the Contract. In fact, MSU even notified RCT that it was terminating the Contract with it. The Court finds that by its conduct, MSU ratified the assignment and waived its rights to object. *Detroit T. & I.R. Co. v. Western U. Tel. Co.,* 200 Mich. at 7, 166 N.W. 494.

The Court notes that RC and RCT have represented on the record that RCT will amend its arbitration demand before the American Arbitration Association to include RC as a party as soon as this matter is ordered to arbitration and the stay is lifted.

## CONCLUSION

The Court finds that the parties to the Contract clearly agreed to arbitrate "any controversy or claim arising out of or relating to the agreement or the breach thereof" and that the claims of MSU alleged in this action are within the scope of the arbitration provision. The Court also finds that the Contract is assignable and not within the personal contract exception to the general rule of free assignability. Accordingly, the Court will grant the motion of RC and RCT to stay this action in accordance with the parties' agreement to arbitrate "any controversy or claim arising out of or relating to this agreement or the breach thereof."

---

1. MSU contends that RCT cannot perform all of RC's obligations, especially as to granting certain proportions of its income in aid of scientific research, because RCT is a taxed entity and RC is not. The Court does not find this persuasive because tax law is variable and only has an incidental impact on the obligations of RC and RCT, as assignee, under the Contract. Moreover, MSU does not otherwise allege that RCT did not perform the technology transfer services and invention administration services required under the Contract as well as RC.