# STATE OF MICHIGAN

# COURT OF APPEALS

JAWAD A. SHAH, M.D., PC, INTEGRATED HOSPITAL SPECIALISTS, PC, INSIGHT ANESTHESIA, PLLC, and STERLING ANESTHESIA, PLLC,

Plaintiffs-Appellants,

v

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

Defendant-Appellee.

FOR PUBLICATION
May 8, 2018

No. 340370
Genesee Circuit Court
LC No. 17-108637-NF

Before: BORRELLO, P.J., and SHAPIRO and TUKEL, JJ.

SHAPIRO, J. (*concurring in part and dissenting in part*).

I concur with the majority's conclusion that the anti-assignment clause in defendant's policy is unenforceable because it conflicts with long-standing principles of contract law and the Michigan no-fault act. I dissent from the majority's conclusion that the one-year-back provision runs from the date of the assignment rather than from the date set forth in the no-fault act, i.e. the date "the action was commenced." Lastly, I conclude that *W A Foote Mem Hosp v Mich Assigned Claims Plan*, 321 Mich App 159; 909 NW2d 38 (2017), lv pending, was wrongly decided, and that *Covenant Medical Ctr, Inc v State Farm Auto Mut Ins* Co, 500 Mich 191; 895 NW2d 490 (2017), should be given only prospective application.

## I. ANTI-ASSIGNMENT CLAUSE

For over 100 years, Michigan law has provided that all contracts, other than those that involve personal performance, are assignable. In *Northwestern Cooperage & Lumber Co v Byers*, 133 Mich 534; 95 NW 529 (1903), the Michigan Supreme Court held that:

> [W]here an executory contract is not necessarily personal in its character, and can, consistent with the rights and interests of the adverse party, be fairly and sufficiently executed as well by an assignee as by the original contractor, and when the latter has not disqualified himself for a performance of the contract, it is assignable.

-1-

Accord *Voigt v Murphy Heating Co*, 164 Mich 539; 129 NW 701 (1911); *Detroit, T. & I.R. Co v W.U. Tel Co*, 200 Mich 2, 5; 166 NW 494 (1918).

This basic principle of contract law has never changed. It was recently articulated *In re Jackson*, 311 BR 195, 200-201 (Bankr WD Mich, 2004), where, applying Michigan law, the court stated:

> As a general rule, contract rights and duties are assignable.
>
> Notwithstanding this general rule, Michigan law recognizes certain classes of contracts as inherently nonassignable in their character, such as promises to marry, or engagements for personal services, requiring skill, science, or peculiar qualifications. [Citations omitted.]

In this case, it is undisputed that the contract in question is not one for personal services, and so falls within the general rule that contract rights may be assigned.

Defendant argues that despite this general rule, the insured may not assign his right to overdue benefits because its insurance policy contains an anti-assignment clause. The majority properly relies on *Roger Williams Ins Co v Carrington*, 43 Mich 252; 5 NW 303 (1880), for the principle that once the assigning party has performed, her right to assign past benefits cannot be contractually limited. Significantly, *Roger Williams* does not stand alone and multiple legal authorities support its analysis.

The case of *In re Jackson,* cited above, is directly on point. The contract in that case was a settlement agreement that provided for Jackson to receive annuity payments. *In re* Jackson, 311 B R at 197. The settlement contract contained an anti-assignment clause, and the question before the court was whether the annuity payments could nevertheless be assigned. The court answered affirmatively, noting that while a party may not assign benefits while its own performance is incomplete, it cannot be barred from assigning its rights as to the other party's performance once it has itself performed:

> An executory contract is "a contract that remains wholly unperformed *or for which there remains something still to be done on both sides*." With respect to the [Jackson's] contractual obligations, the Settlement Agreement is not executory. Immediately upon executing the Settlement Agreement, [Jackson] released her claims against the state court defendants and dismissed her lawsuit with prejudice. As of the date of the [Jackson's] agreement with Settlement Capital, Jackson had fully performed the duties required of her.
>
> Therefore, Jackson, *having held up her end of the bargain with Transamerica Insurance, had every right to partially assign her interest in the annuity to Settlement Capital, irrespective of the anti-assignment clause.* The modern trend with respect to contractual prohibitions on assignments is to interpret them narrowly, as barring only the delegation of duties, and not necessarily as precluding the assignment of rights from assignor to assignee. Unless the circumstances indicate the contrary, a contract term prohibiting

assignment of 'the contract' bars only the delegation to an assignee of the performance by the assignor of a duty or condition.

\* \* \*

[It is argued] that the anti-assignment clause in the Settlement Agreement renders inapplicable the general rule that contract rights and duties are assignable. We find however, that Michigan law mandates application of the general rule. This finding is based on the theory that *once a party to a contract performs its obligations to the point that the contract is no longer executory, its right to enforce the other party's liability under the contract may be assigned without the other party's consent, even if the contract contains a non-assignment clause.* [*In re Jackson*, 311 BR at 201 (quotation marks and citations omitted) (emphasis added).]

This principle is broadly recognized. As described in Couch on Insurance:

[T]he great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss,[2] for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from a claim arising under the policy, and the assignment before loss involves a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.[3] *The purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased by a change in the insured's identity.* [ 3 Couch on Insurance, § 35:8 (emphasis added)].

Another learned treatise states:

Anti-assignment clauses in insurance policies are strictly enforced against attempted transfers of the policy itself before a loss has occurred, because this type of assignment involves a transfer of the contractual relationship and, in most cases, would materially increase the risk to the insurer. Policy provisions that require the company's consent for an assignment of rights are generally enforceable only before a loss occurs, however, as a general principle*, a clause restricting assignment does not in any way limit the policyholder's power to make an assignment of the rights under the policy – consisting of the right to receive the proceeds of the policy – after a loss has occurred.* The reasoning here is that once a loss occurs, an assignment of the policyholder's rights regarding that loss in no way materially increases the risk to the insurer. After a loss occurs, the indemnity policy is no longer an executory contract of insurance. It is now a vested claim against the insurer and can be freely assigned or sold like any other chose in action or piece of property. [17 Richard A. Lord, *A Treatises on the Law of Contract by Samuel Williston*, § 49:119 (4th ed, 2015) (emphasis added).]

The Restatement of Contracts 2d, § 322(1), articulates the same rule, stating, "Unless the circumstances indicate the contrary, a contract term prohibiting assignment of 'the contract bars only the delegation to an assignee of the performance by the assignor of a duty or condition." This principle is more clearly expressed in The Restatement of Contracts 2d, § 322(2), which provides that "[a] contract term prohibiting assignment of rights under the contract . . . does not forbid assignment of a right to damages for breach of the whole contract or a right arising out of the assignor's due performance of his entire obligation."

Defendant State Farm makes a public policy argument, asserting that permitting assignments will significantly complicate the claims process. This argument is both factually and legally inapposite. It is *factually* inapposite for two reasons. First, because defendant already has a claim process that has been operational for decades that allow for assignments and payment to providers. Second, because defendant's claims of increased administrative costs is not supported by any *evidence*. It should come as no surprise that a court may not base its decision on factual assertions unsupported by any evidence; such factual assertions amount to nothing more than speculation until such evidence is proffered. State Farm's public policy argument is *legally* inapposite for two reasons. First, because it is inconsistent with over 100 years of law. Second, because its position is intrinsically contrary to the purpose of the no-fault system, which is designed to provide "*assured*, adequate, and prompt reparation for certain economic losses." *Shavers v Kelley*, 402 Mich 554, 579; 267 NW2d 72 (1978) (emphasis added). Defendant takes the position that it has an unrestricted right to employ mechanisms to decrease its *administrative costs* even where those administrative mechanisms will result in a denial of benefits to injured persons who have paid their premiums and obtained reasonable and necessary medical treatment following a covered accident.

This view is contrary to Michigan law generally, and to the no-fault act in particular. As the court explained in *Wonsey v Life Ins Co of North America*, 32 F Supp 2d 939, 943 (ED Mich, 1998):

> [D]efendants strenuously argue that when a beneficiary of a structured settlement agreement decides to sell all or a number of his future payments, "it requires a complicated review process" and that "defendants [would be required] to review substantial paper work, and [to] determine if the assignment appears to be legal . . . and/or whether any guarantees or releases provided by the assignor . . . are satisfactory to fully and completely protect [defendants]. . . ." The Court is not persuaded. *The reasons asserted by defendants in objecting to the proposed assignment do not appear to amount to substantial harm or actual prejudice to defendants' interests, but merely center upon the necessary administrative tasks associated with the assignment's implementation.* As such, defendants have not submitted sufficient reasons to . . . [enforce] contractual anti-assignment clauses. (Emphasis added).

The no-fault act itself speaks to the issue of assignment. It provides, "An agreement for assignment of a right to benefits *payable in the future* is void." MCL 500.3143 (emphasis added). Notably, the Legislature elected not to void assignment of past due benefits. By not including past due benefits in this statutory prohibition, the Legislature, under the doctrine of

*expressio unius est exclusion alterius*, made clear its intent to adhere to the fundamental principle that assignments of past due benefits are effective and proper.

Defendant argues that its "right of contract" must supersede these long-standing principles. However, it cites nothing in the no-fault act providing that insurers may add *policy language* ostensibly in order to limit administrative costs that have the effect of denying benefits to individuals who are entitled to them under the *statutory language*. Defendant cites to *Rory v Continental Ins Co*, 473 Mich 457; 703 NW2d 23 (2005), for the principle that an insurance contract may include provisions as to which the no-fault act does not speak. However, defendant reads *Rory* too generously. *Rory* involved uninsured motorist coverage, an insurance product whose mechanism is not governed by the no-fault act.[1]

Defendant's theory seems to be that it may include any provision to its policies so long as the provision is not explicitly barred in the no-fault act. It contends therefore, that it has the right to add policy provisions not provided for in the Act whose result, if not purpose, is to deny benefits to people who qualify under the statute. This position cannot be squared with the fundamental goal of the no-fault act to provide "*assured*, adequate, and prompt reparation for certain economic losses." *Kelley*, 402 Mich at 579.

Defendant's conceptual error lies in its view that the no-fault act is defined by what *it does not say*, i.e. because the Act does not explicitly prohibit an anti-assignment provision, an insurer is free to insert such a provision into the policy regardless of its effect on the functioning of the no-fault system and an insured's ability to obtain covered medical treatment. However, the no-fault act must be defined by what it *does say*. It defines a comprehensive statewide *system* designed to provide "assured, prompt and adequate" coverage for medical services following an auto accident. The fact that the Act does not contain an omnibus list of actions inconsistent with that comprehensive system does not mean that it intended that such actions

---

[1] I respectfully suggest that the Michigan Supreme Court should revisit *Rory*'s conclusion that there is no such thing as a "contract of adhesion." Anyone (except perhaps some lawyers and judges) who has ever purchased an auto insurance policy—which under law all car owners must do—knows exactly what a contract of adhesion is. One party, typically an individual, is presented with a pre-printed policy and told to "take it or leave it." On the other side is typically an insurance entity with billions of dollars in assets and multiple employees dedicated to drafting contract language that will favor the entity in every way possible under the law or in what the entity hopes it can reshape the law to be. If the individual, assuming he or she is able to understand the policy language, declines to accept every word as written, they will not be permitted to purchase a policy. No revisions are even entertained. Moreover, if this individual then seeks coverage from a competitor insurer, they are all but certain to face the same or similar situation. In sum, the only "freedom of contract" that an individual purchaser has is to buy or not buy. And that freedom is illusory since by law, every vehicle owner must obtain insurance. Accordingly, I respectfully suggest that the "freedom of contract" discussed in *Rory* is less a reality in this context than it is a phrase used to permit the judicial branch to ignore the words and the will of the Legislature as defined in the no-fault act.

should be permitted. There is nothing in the Act that indicates that the Legislature intended to allow insurers to unilaterally add limitations on benefits. Ultimately, if insurers are free to add whatever administrative conditions or hurdles their policy drafters can define, then the Legislature's comprehensive system will be sliced and diced by artfully drafted policy provisions, and deprive insureds the benefits they paid for, and which the no-fault act mandates. Defendant's position is a slippery slope by which the no-fault system dies the death of a thousand cuts.

## II. ONE-YEAR-BACK RULE

I dissent from the majority's conclusion that the one-year-back date should be measured from the date of the assignment and not the day that suit was filed. The statute provides that benefits may not be recovered "for any portion of the loss incurred more than 1 year before *the date on which the action was commenced*." MCL 500.3145(1) (emphasis added). In this case, the action was commenced on February 24, 2017, by these plaintiffs against this defendant. Nothing has changed in the nature of the action. I respectfully suggest that the majority is mistaken in its view that the addition of an allegation to establish standing when the issue is raised "commences" a new "action."

The majority cites scant authority for this position. It cites *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004), for the general principle that an assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses."[2] From this, the majority concludes that "plaintiffs could not obtain any greater rights from Hensley on the date of the assignments—July 11, 2017—than Hensley possessed on that date." However, the triggering of the one-year-back statute does not depend on whether there was a "right" to file suit, but only on the date suit was filed. Of course, if a party lacks the "right" to

---

[2] *Burkhardt* was not a no-fault case and the question was whether a party could assign rights it did not possess at the time of the assignment. In the instant case, by contrast, there is no dispute about the insured's possession of the right to benefits when he assigned them to the plaintiff health care provider. Specifically, *Burkhardt* involved multiple parties involved in a tax foreclosure and subsequent assignments. The party foreclosed upon, Bailey, did not redeem and the plaintiff purchased the property at tax auction. 260 Mich App at 639-640. The plaintiff, however, failed to give notice to the mortgagor, Bond. *Id*. at 640. The case came before this Court twice. In its first decision, the Court refused to quiet title and held that Bailey had lost all rights of redemption, but that Burkhardt still had time to provide notice to the mortgagee who could thereupon, object and assert its rights, which it later did. *Id*. at 641. While the case was pending on appeal, the intervening defendant, Hamilton, provided funds to Bailey to pay off his mortgage and Bond recorded a discharge of the mortgage. *Id*. at 641-642. After the discharge of the mortgage, Bond assigned any rights of redemption it had to Hamilton who sought to redeem. The Court determined that once the mortgage was discharged, Bond's rights as mortgagor were extinguished, and so Bond had no right of redemption to assign to Hamilton. *Id*. at 645-646. Accordingly, the Court found that Bond's assignment to Hamilton was void and granted Burkhardt a quiet title judgment. *Id*. at 660-661.

sue, then the court in which it was filed will dismiss it and in those cases, the application of the one-year-back rule will not be at issue. However, here, plaintiffs sought to amend his complaint to cure the standing problem *before* the court ordered that it be dismissed, and as already noted, neither the parties nor the cause of action changed in any way.

The majority also relies on *Grist v Upjohn Company*, 1 Mich App 72; 134 NW2d 358 (1965), but the question in that case was fundamentally different than the one before us today. In *Grist*, the plaintiff sued for defamation. *Id*. at 74. Later, she sought to add an additional count of other acts of defamation that had occurred since the filing of her complaint. *Id*. at 76-77. However, the statute of limitations had run as to these new claims, so she asserted that she could add them to her original complaint by the doctrine of relation back. *Grist*, 1 Mich at 83-84. The Court rejected the argument stating that the plaintiff may not add new *claims* as to which the statute had run by adding them to a previously filed action. *Id*. at 84-85. In the instant case, plaintiffs do not seek to add any claim and certainly does not seek to add a claim as to which the statute of limitations has run. Indeed, every claim at issue in this case was defined and set forth in the initial complaint. Plaintiffs seek exactly what it sought at the outset of the case, payment of past due benefits.

Accordingly, I would hold that the one-year-back period runs from the date the suit was filed.

### III. RETROACTIVITY OF *COVENANT*

In *Covenant*, 500 Mich at 195, the Michigan Supreme Court held that healthcare providers do not have an independent cause of action against a no-fault carrier for failure to pay benefits. In *W A Foote Mem Hosp*, 321 Mich App at 196, this Court concluded that the rule articulated in *Covenant* should be applied retroactively. I agree with much of the Court's analysis in that case. The opinion accurately reviews the United States Supreme Court's decision in *Harper v Virginia*, 509 U S 86; 113 S Ct 2510; 125 L Ed 2d 74 (1993), which holds that retroactive application must be applied in federal cases, but notes that the individual states are not bound to follow that rule. I am less convinced by the *Foote* Court's reliance on *Spectrum Health Hosps v Farm Bureau Mut Ins Co of Mich*, 492 Mich 503, 536; 821 NW2d 117 (2012), which continued to recognize that an exception to the principle of retroactivity, stating:

> When a statute law has received a given construction by the courts of last resort and contracts have been made and rights acquired under and in accordance with such construction, such contracts may not be invalidated, nor vested rights acquired under them impaired, by a change of construction made by a subsequent decision.

The Court went on to note that in the case before it, the "decision today does not at all affect the parties' contractual rights" and should be retrospectively applied. *Id*. at 536-537.

There is no question that plaintiffs: (1) properly and reasonably relied on what appeared to be settled law when it filed suit, (2) that it provided services to defendant's insured based upon that law, and (3) that it has not been paid. A prospective application would merely allow health care providers that provided services based on the law as it was universally understood, to be

paid for those already-provided services. A retroactive application, by contrast, creates a distorted result inconsistent with the no-fault act. The hospital, which provided a valuable service, will remain unpaid, while the insurer, which has already been paid (the insured's premiums), will not have to provide the service it was paid to perform.

With these concerns in mind, I respectfully suggest that the better course would be to follow the common-sense principles described in *Tebo v Havlik*, 418 Mich 350; 343 NW2d 181 (1984), which arose prior to the Supreme Court's decision in *Putney v Haskins*, 414 Mich 181; 324 NW2d 729 (1982), that required that dramshop plaintiffs "name and retain" the intoxicated driver as a defendant when suing the bar or other liquor license. MCL 436.22. Thus, the statute was adopted while the case was pending. The question therefore, was whether the "name and retain" requirement should be applied retroactively, which would result in the dismissal of many dramshop cases filed before the change:

> It is evident that there is no single rule of thumb which can be used to accomplish the maximum of justice in each varying set of circumstances. The involvement of vested property rights, the magnitude of the impact of decision on public bodies taken without warning or a showing of substantial reliance on the old rule may influence the result.

> The benefit of flexibility in opinion application is evident. If a court were absolutely bound by the traditional rule of retroactive application, it would be severely hampered in its ability to make needed changes in the law because of the chaos that could result in regard to prior enforcement under that law. *Placek v. City of Sterling Heights,* 405 Mich. 638, 665, 275 N.W.2d 511 (1979).

> Appreciation of the effect a change in settled law can have has led this Court to favor only limited retroactivity when overruling prior law. Thus, when the doctrine of imputed negligence was overruled in *Bricker v. Green,* 313 Mich 218; 21 NW2d 105 (1946), the decision was applied only to the case before the Court and to pending and future cases. When the doctrine of charitable immunity was overruled in *Parker v. Port Huron Hospital,* 361 Mich 1; 105 NW2d 1 (1960), the retroactive effect of the decision was limited to the parties before the Court. Even where statutory construction has been involved, this Court has limited the retroactivity of a decision when justice so required.

> The question before us is whether our interpretation of a statute should be applied retroactively to the statute's effective date. In *Putney,* we found the clear import of the statute to be to require the plaintiff to name and retain the allegedly intoxicated person at risk. Were *Putney* a case of first impression in the Michigan courts, we would hold that the statutory language gave plaintiffs no reason to believe that the settlements entered into would comply with the "retain" portion of the statute. *Putney,* however, was not a case of first impression in the Michigan courts.

* * *

In light of the unquestioned status of *Buxton* at the time *Putney* was decided by this Court, it would be unjust to apply *Putney* retroactively to persons other than those before the Court in that case.

In contrast to the harsh effect which the full retroactivity of *Putney* would have on injured plaintiffs, prospective application will have little effect on dramshop defendants in those pending cases where settlement agreements have been made, even though the defense of *Putney* will be unavailable. For them, the law will simply remain as it was from 1976 to 1982. We hold that *Putney v Haskins* is applicable to all cases where settlement agreements are entered into with the allegedly intoxicated person after the date of decision in *Putney*. [*Tebo*, 418 Mich at 360-361, 363-364 (quotation marks and citation omitted.)]

For these reasons, I conclude that *Foote* was wrongly decided and that *Covenant* should only be applied prospectively.

III. CONCLUSION

I join the majority in holding that the anti-assignment clause in the policy is unenforceable. I dissent from the majority's conclusion as to the one-year-back rule, which I conclude should be calculated from the date plaintiffs filed suit.

/s/ Douglas B. Shapiro