*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT J. EPPERT,

        Plaintiff-Appellee,

v

APRIL BAILEY, WILLIAM BAILEY, and LINDA BAILEY,

        Defendants-Appellants.

UNPUBLISHED
January 19, 2023

No. 361256
Iosco Circuit Court
LC No. 21-002928-CZ

Before: RIORDAN, P.J., and MARKEY and REDFORD, JJ.

PER CURIAM.

In this property-line dispute, defendants April Bailey, William Bailey, and Linda Bailey appeal as of right the trial court's March 30, 2022 order granting summary disposition in favor of plaintiff Robert J. Eppert and ordering that the common boundary line between plaintiff's property and defendants' property is as requested by plaintiff. On appeal, defendants argue that the trial court erred by granting summary disposition in favor of plaintiff because there is a genuine issue of material fact as to whether the parties acquiesced to a boundary line that differs from the original plat line. We agree. Therefore, we reverse the trial court and remand to that court for further proceedings.

## I. FACTS

On September 22, 2021, plaintiff filed his complaint against defendants, alleging as follows. Plaintiff and defendant April Bailey are adjacent property owners on Lake Huron, and defendants William and Linda Bailey are April's parents, as well as the previous owners and current occupants of her property. Plaintiff continued:

> ¶ 2. That the boundary existing between these two "properties" has been in existence for nearly a half a century consisting of a very open, hostile, notorious, and exclusive, and very well- maintained fence mutually accepted by both parties for at least 46 years, with a running length of approximately 150 feet, as well as a row of approximately 35 foot tall arbor vitae trees-shrubs, planted in 1972 by Defendants' father-grandfather, with a running length of approximately 100 feet,

and a second row of arbor vitaes with an approximate length of 15 feet, totaling at least 265 feet and ending near the shores' edge and Plaintiffs' breakwall which extends another approximate 45 feet. Defendant has no breakwall and has never put one in, nor his predecessors in title.

* * *

¶ 14. It is the humble opinion of Plaintiff that this is the classic case of people thinking that a survey conveys ownership as opposed to a court of law, especially in "boundary cases", acknowledging mutually-accepted, long established boundaries-occupation, per exhibit 3.

Elsewhere in his complaint, plaintiff explained that defendants sought to build a breakwall in recent months but that the "surveyors showed up a few weeks ago (from this filing) and started to plant flags inconsistent with the boundary-markers mentioned above and placed some of them on the property owned and occupied by Plaintiff . . . ." Plaintiff requested that the trial court halt construction and "adjudicate[] rights and responsibilities as it concerns title commensurate with the very longstanding boundary-markers."

On November 8, 2021, defendants filed their answer to plaintiff's complaint, responding to ¶¶ 2 and 14 as follows:

2. In answer to the averments contained in Paragraph 2, Defendants admit the boundary line between the "two parties" has been in existence for close to 100 years. Defendants admit the fence has been there around 46 years but presently is in disrepair. Defendants admit there are approximately 35-foot-tall trees planted in 1972 by relatives of the Defendants running approximately 100 feet. Defendants admit there are second row of trees which Plaintiff placed on Defendants' property without their permission in the past few years that are close to the lake and block Defendants' view of the lake and need to be removed. Defendants admit there is a seawall that extends into the water for perhaps 45 feet, whether it is Plaintiff's seawall is a matter of conjecture as part of the seawall on Defendants' property was built by the Plaintiff with the Defendants' mother's permission that met her requirements but, that, in 2018 without Defendants' permission Plaintiff added material further onto Defendants' property as well as adding 5 feet in height to the breakwall. Deny Defendants don't have seawall. They do and it's on their property; some with permission to do, some without permission to do so.

* * *

14. No need to answer what Plaintiff says in his humble opinion, but in further answer state the boundary line has been the same for over 100 years and all parties have recognized the fence and the 25 trees planted in 1972 by Defendants' predecessors but Defendants do not recognize the 15 feet of trees that Plaintiff planted in the past few years and have asked him to remove them. Further, Defendants wish to construct a breakwall and put in fill as well as remove loose

concrete chunks that are a hazard on the seawall on their side of the seawall if allowed by EGLE and the Army Corps. Of Engineers.

Defendants requested that the trial court recognize "the established boundary line."

On December 7, 2021, plaintiff moved for summary disposition pursuant to MCR 2.116(C)(4), (9), and (10), arguing that the trial court should "enter a judgment/order adjudicating the boundary line common to both parties to be the existing fence of Plaintiff, then in a straight line to the center of the existing shrubs-trees, and to result in clearing Plaintiffs breakwall, After a legal description is obtained . . . ." The only documentary evidence that plaintiff submitted to establish that there was no genuine issue of material fact was his affidavit, which stated, in its entirety, as follows:

1. This motion is being made pursuant to MCR 2.116 (c) (4), (9), and (10).

2. That Defendants admit in the very own pleadings in Paragraph (2) therein that the boundary line as set forth by Plaintiff in his Petition has been around for a 100 years! It specifically references the 100 feet of a row of shrubs-trees, and plaintiffs' breakwall; a breakwall repairing an existing breakwall and permitted by the State because of the bottomlands, Army corps of Engineers because of their jurisdiction regarding the international nature of Lake Huron, and the county because of their jurisdiction over soil erosion. All three finally inspected and accepted same after the project was completed. Notice should be made of the fact that defendants do not assert any claim of possession, title, nor responsibility associated with the breakwall.

3. Defendants did not come into a title position until 2001, 21 years after Plaintiff acquired title.

4. That as stated above, Plaintiff has undisputedly assert title, ownership (because he defended his shoreline BEFORE any erosion took place), and possession of said wall in an open hostile, exclusive manner since 1980.

5. That pursuant to Defendants responsive pleadings, rather than the boundary line of the fence, shrubs-trees, and breakwall, that their primary concern is their own breakwall issue with which The State of Michigan (EGLE) and the Army Corps have jurisdiction, not this court. Also this case is about the boundary line, not a breakwall yet to be built. MCR 2.116 (c) (4).

6. Lastly, defendants clearly admit the above in Paragraph 14 of their answer that indeed the boundary line is in fact the fence, shrubs-trees, and Plaintiffs' breakwall. So Plaintiff feels there are no remaining issues pursuant to MCR 2.116 (9) or (10).

7. Plaintiff repaired an existing wall on his property in 1981, 1988, 1995, 1998, and 2018. At no time did defendants, nor their predecessor claim any right therein, nor any objection therewith, probably because plaintiffs' breakwall was protective of defendant s interests (from nearly all nor'easterlies). Defendants'

predecessor was his father, the same gentleman that planted the row of trees, and never questioned the fenceline mentioned in Plaintiffs' pleadings.

On December 10, 2021, the trial court held a pretrial hearing, during which plaintiff represented that "the parties have entered into an agreement," and once a survey was completed early the following week, a consent judgment with a legal description of the boundary line would be given to the trial court.

On February 18, 2022, defendants responded to plaintiff's motion for summary disposition, arguing that the boundary line for the past century has been "Commencing at the NW corner of lot thence N $50^0$ 43'25" W to the recognized high water mark." Defendants requested that the trial court enter an order maintaining this boundary line. Exhibit A to the brief was a survey conducted on August 22, 1973, and Exhibit B was a survey conducted on July 27, 2021. Both of those surveys are consistent with the original plat line.

On March 2, 2022, the trial court held a hearing on plaintiff's motion for summary disposition. At the hearing, plaintiff argued that

> [t]here are three primary natural boundary markers and they are admitted to by both parties. Going from the road to the water is a fence, trees, and break wall and they – they have been there . . . [at least 60 years] . . . . We would be seeking, at least, a partial summary on the Court's ruling in our favor that those do form the natural boundaries.

Defendants, on the other hand, argued that

> [b]asically, our position in this matter is there was a boundary line there and has been since – for a hundred years and it's the description I have in my pleadings. Basically, there is a fence that is seven inches onto our client's property. We certainly, and I have told [plaintiff] before, if you want to move the description to take in those seven inches, which goes from Media Drive all the way down to Baker, that's okay with us . . . .
>
> * * *
>
> Well, the problem – the problem is this, that although the trees have been there, okay? They are not exactly on the boundary line, they are two and a half feet off of the boundary line on my client's property. [Plaintiff], on the other hand, has put a privacy fence and some smaller arborvitae trees on our property, about a in – a foot and a half onto our property. What we are merely saying is, there is a boundary line in that plat, in the surveys, that runs a straight line from Media Drive on the northwest corner of my client's private property, all the way down to the shoreline and that's the one that has always been used and we want to keep it.

When the trial court asked defendants' counsel about the earlier "agreement" between the parties, counsel explained that the parties "did not have an agreement," and he said that he "wanted to wait until [he] got the description" before deciding whether it was acceptable. Defendants added that plaintiff's proposed boundary line was problematic because it gave plaintiff ownership of the

breakwall on the water parallel to defendants' property, and that "bottom land[]" was actually owned by the State of Michigan.

In response, plaintiff reiterated that he "would like a partial on the three natural boundaries that have been agreed to." The trial court agreed without providing any reasoning, stating that "I'm going to grant your motion for partial summary disposition, [plaintiff], if you will draft an order to that effect. Include in the other that I'm going to order the defendants to pay half of the cost to the surveyor."

Defendants declined to sign the proposed judgment drafted by plaintiff. On March 29, 2022, the trial court held a hearing on the matter. Defendants explained that plaintiff's proposed judgment was objectionable because it awarded plaintiff the land "along the full length of the existing break wall," whereas the trial court did not indicate at the earlier hearing that plaintiff was to be awarded that land. Plaintiff disagreed and indicated that his proposed judgment was consistent with the trial court's earlier ruling. The court clerk then listened to the recording of the earlier hearing and informed the trial court that it granted plaintiff partial summary disposition, but the details were unsettled. After some back-and-forth that did not shed light on the situation, the trial court stated that it would sign plaintiff's proposed judgment because "I did grant his motion for summary disposition. The argument you are continually making to me is about the break wall and who owns it, which really has nothing to do with what is going to happen in this case. The State of Michigan, certainly, if they have some objection to the legal description, can come forth later."

The next day, the trial court entered the following order:

> IT IS HEREBY ORDERED AND ADJUDGED: That Plaintiffs' motion for Summary Disposition is granted, that the boundary line common to both parties of which the Plaintiff owns North-Easterly thereof, is that line starting from Media Drive, thence along an existing fence, thence to the centerline of all of the tall arborvitae shrub-trees, thence southerly to the extension of the breakwall, thence along the full length of the existing breakwall.
>
> * * *
>
> IT IS HEREBY FURTHER ORDERED AND ADJUDGED: That the common boundary line between Plaintiffs' and defendants' property shall hereafter be legally described as per the attached survey drawing (Exhibit 1-A) and description (Exhibit 1-B).

Defendants moved for reconsideration, which the trial court denied. Defendants then appealed to this Court. Plaintiff filed a motion to dismiss this appeal, and a separate motion to peremptorily affirm the trial court. We denied the motions. *Eppert v Bailey*, unpublished order of the Court of Appeals, entered August 2, 2022 (Docket No. 361256).

The matter is now before us for plenary consideration.

## II. STANDARD OF REVIEW

"Appellate review of a motion for summary disposition is de novo." *Gyarmati v Bielfield*, 245 Mich App 602, 604; 629NW2d 93 (2001). Because the trial court seemingly considered documents beyond the pleadings (i.e., the survey submitted by plaintiff), we treat the motion for summary disposition as having been granted under MCR 2.116(C)(10). See *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 206; 920 NW2d 148 (2018).

> A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion. Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law. [*Id*. at 207 (citation omitted).]

## III. DISCUSSION

Defendants argue that the trial court erred in granting summary disposition in favor of plaintiff "because the only boundary line that had been around for and acquiesced to for 100 years, was the metes and bounds description between [the parties] established by the Plat of the Huron Shores Subdivision and the First Addition to the Huron Shores Subdivision." We agree with defendants to the extent that there was at least a genuine issue of material fact as to whether the parties acquiesced to a different boundary line.

"Under Michigan law, parties may acquiesce to a new property boundary line." *Houston v Mint Group, LLC*, 335 Mich App 545, 567; 968 NW2d 9 (2021). "The doctrine of acquiescence provides that where adjoining property owners acquiesce to a boundary line for at least fifteen years, that line becomes the actual boundary line." *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). In *Kipka v Fountain*, 198 Mich App 435, 438-439; 499 NW2d 363 (1993), this Court explained as follows:

> The law of acquiescence is concerned with a specific application of the statute of limitations to cases of adjoining property owners who are mistaken about where the line between their property is. Adjoining property owners may treat a boundary line, typically a fence, as the property line. If the boundary line is not the recorded property line, this results in one property owner possessing what is actually the other property owner's land. Regardless of the innocent nature of this mistake, the property owner whose land is being possessed by another would have a cause of action against the other property owner to recover possession of the land. After fifteen years, the period for bringing an action would expire. The result is that the property owner of record would no longer be able to enforce his title, and the other property owner would have title by virtue of his possession of the land. [Citation omitted.]

"Unlike a claim based on adverse possession, an assertion of acquiescence does not require that the possession be hostile or without permission. The acquiescence of predecessors in title can be tacked onto that of the parties in order to establish the mandated period of fifteen years." *Killips*,

244 Mich App at 260 (internal citation omitted). "The proper standard applicable to a claim of acquiescence is proof by a preponderance of the evidence." *Id.*

We conclude that there is a genuine issue of material fact as to whether plaintiff is entitled to extend his property line under the doctrine of acquiescence. As an initial matter, while plaintiff repeatedly argues that defendants conceded in the trial court that the trees, fence, and breakwall in Lake Huron established the agreed-upon boundary line for decades, defendants did not do so. To the contrary, defendants indicated in their answer to plaintiff's complaint that the boundary line was the original plat line: "Defendants admit the boundary line between the 'two parties' has been in existence for close to 100 years." In other words, defendants did not admit that the boundary line had changed in recent decades based upon certain markers. Similarly, defendants argued at the March 2, 2022 hearing that "we are merely saying is, there is a boundary line in that plat, in the surveys, that runs a straight line from Media Drive on the northwest corner of my client's private property, all the way down to the shoreline and that's the one that has always been used and we want to keep it." Simply put, while defendants did agree that the trees, fence, and breakwall are approximately near the true boundary line, they did not agree that these markers precisely formed the true boundary line.

The question then becomes whether plaintiff established that there was no genuine issue of material fact as to whether the boundary line should be moved under the doctrine of acquiescence, thus satisfying his burden on the matter. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) ("In presenting a motion for summary disposition, the moving party has the initial burden of supporting its position by affidavits, depositions, admissions, or other documentary evidence."). We conclude that he did not. The only documentary evidence that plaintiff introduced in support of his motion for summary disposition was his own affidavit, which is quoted in its entirety above. Nothing in that affidavit established that the parties had acquiesced, for a 15-year period, in a boundary line reflected by the trees, fence, and breakwall. At most, the affidavit indicates that defendants conceded in their answer that the true boundary line was reflected by those markers. However, as previously explained, defendants did not make that concession. Defendants have instead argued throughout this case that the true boundary line is the original plat line and that they did not acquiesce to a different one. Consequently, plaintiff failed to satisfy his burden of proof with respect to his motion for summary disposition, and the trial court therefore erred by granting it.

## IV. CONCLUSION

The trial court erred by granting summary disposition in favor of plaintiff because there was a genuine issue of material fact as to whether the parties acquiesced in a particular boundary line for the statutory 15-year period. Therefore, we reverse the trial court and remand to that court for further proceedings. We do not retain jurisdiction.

-8-

/s/ Michael J. Riordan
/s/ Jane E. Markey
/s/ James Robert Redford