*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MATTHEW GEDDA, Guardian for SG, a legally
incapacitated person,

Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

Defendant-Appellant.

UNPUBLISHED
December 7, 2023

No. 361693
Washtenaw Circuit Court
LC No. 22-000152-NF

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals by leave granted[1] the trial court's grant of a preliminary injunction to plaintiff, Matthew Gedda. The preliminary injunction requires State Farm, during the pendency of Gedda's case against it, to process and pay personal-protection-insurance (PIP) benefits for Gedda's brother, SG, as they existed at the time of his July 2011 motor-vehicle accident. We affirm.

## I. BACKGROUND

This case originates from a motor vehicle wreck that rendered SG a quadriplegic who now requires constant medical care. In mid-July 2011, a semi-truck rear-ended SG's vehicle, knocking it off the road. SG, then 43 years old, suffered a traumatic brain injury and spinal cord injury as a result of the accident. The spinal cord injury rendered him a quadriplegic and he now requires 24/7 "high-tech" care and nursing care. Livingston Helping Hands (LHH) provides SG's care, which includes wound care, skin assessment, medication management and administration, catheter maintenance, bowel and bladder care, and help with the activities of daily life. SG also has a

---

[1] *Gedda v State Farm Mut Auto Ins Co*, unpublished order of the Court of Appeals, entered August 11, 2022 (Docket No. 361693).

tracheotomy, needs a ventilator to breath, and has a colostomy bag. SG has a trust in his name that pays LHH for the care it provides him. His brother, Gedda, is the trustee.

From the time of his accident until approximately mid-September 2021, State Farm paid for SG's medical expenses under the no-fault act, MCL 500.3101 *et seq*. Gedda paid for SG's care from SG's trust, then sought reimbursement from State Farm on the trust's behalf. State Farm reimbursed SG's trust at a rate of $29.50 an hour for high-tech care and $72.50 an hour for nursing care, and the trust directly paid those amounts to LHH for its services.

In 2019, the Michigan Legislature amended the no-fault act. As part of the amendments, the Legislature imposed new fee schedules and other rules about the amounts service providers could charge. This new fee schedule took effect in early July 2021 and required reimbursement caps on various categories of healthcare expenses, including, relevant here, in-home care. See MCL 500.3157, as amended by 2019 PA 21. Between July 2021 and mid-September 2021, State Farm continued paying for all of SG's care. But in mid-September 2021, it stopped making payments.

Gedda negotiated with State Farm for several months to restart payments for SG's care, without progress. Gedda therefore sued State Farm in early February 2022, raising a single breach-of-contract claim against State Farm. He alleged that State Farm's reduced reimbursement rates constituted a breach of contract and a breach of its statutory obligations under the no-fault act. He also alleged that, at the time he filed the complaint, State Farm owed over $200,000 for SG's care. Gedda sought back and future payment of LHH's invoices, 12% penalty interest as provided by MCL 500.3142, prejudgment interest as provided by MCL 600.6013, and attorney fees. He also requested injunctive relief requiring State Farm to fully and timely pay SG's in-home care at its pre-amendment rates while the case proceeded through litigation.

After answering Gedda's complaint and largely denying the allegations against it, State Farm issued a letter in mid-March 2022 indicating its reduction to the hourly rate of reimbursement for SG's care. For high-tech care, it reduced the rate from $29.50 an hour to $16.89 an hour; for nursing care, it reduced the rate from $72.50 an hour to $41.51 an hour.

In mid-March 2022, Gedda moved for a preliminary injunction compelling State Farm to pay for SG's care at the pre-amendment rates of $29.50 per hour for the high-tech care and $72.50 per hour for the nursing care. Between the time Gedda filed the complaint and the time he moved for a preliminary injunction, the amount he alleged State Farm owed had risen from over $200,000 to over $425,000. According to Gedda, SG's trust advanced payment for his care but had been "depleted[]to the point where [it] will be unable to continue to pay for [his] care much longer." Gedda argued that the four factors relevant for determining whether to issue an injunction favored SG. He asserted that SG faced irreparable harm to his life if the court did not issue the preliminary injunction, and contended this harm far outweighed any financial harm State Farm faced from entry of an injunction. Gedda also argued that his underlying claim was likely to succeed, asserting that State Farm violated the no-fault act by failing to pay SG benefits for approximately six months and the new fee schedule did not apply retroactively to individuals like SG injured before the effective date of the amendment. And he argued that the public had an interest in ensuring that insurers pay benefits they contracted to pay.

In mid-April 2022, State Farm responded to Gedda's motion for a preliminary injunction. It argued that the four factors did not support entry of an injunction. State Farm asserted that Gedda had failed to show irreparable harm because this case only involved a rate dispute and, at best, SG faced speculative economic injury. It noted that the amendment to MCL 500.3157 did not eliminate SG's care but instead placed a limitation on the rate for allowable expenses. State Farm further argued that the underlying claim was likely to fail on the merits because the amendments to the no-fault act were retroactive. It also argued that the harm it faced outweighed that of SG because State Farm likely would not recover any excess payment if it was ultimately found improper. State Farm finally argued that injunctive relief was improper because SG had an adequate remedy at law (money damages) and an injunction would grant complete relief before a hearing on the merits.

In late April 2022, the trial court dispensed with oral argument on Gedda's motion under MCR 2.119(E)(3), granted the motion, and issued a preliminary injunction. The court concluded that "all [four] factors" for granting an injunction were "supported through [Gedda's] argument." The trial court found that the irreparable harm was "not economic," but to SG's "health and life" and agreed there was "no injury more irreparable than lasting illness or death." It also found that SG's "physical and mental safety outweigh[ed] [State Farm's] possible economic loss." The trial court therefore found that "factors 1 and 2" (irreparable harm and harm to the applicant outweighs harm to adverse party) weighed "heavily" in Gedda's favor. The court also found that MCL 500.3157 did not apply retroactively to an injury that occurred in 2011, noting that the Legislature's "silence as to retroactivity speaks loudly . . . ."[2] In the context of this motion, it further found that the "new fee schedule found [in the] no fault reform [was] unconstitutional." The trial court therefore granted Gedda's motion for a preliminary injunction and ordered State Farm to "process and pay" all of SG's "home-care bills from July 2, 2021, until further order of the Court, at a rate of $29.50/hour for [SG's] high-tech care and $72.50/hour for nursing care."

State Farm then moved for reconsideration, focusing on the trial court's finding that the fee schedules were unconstitutional. State Farm contended the court addressed this issue sua sponte, raising a due-process argument that the trial court's decision denied State Farm an opportunity to be heard on this issue. The trial court denied reconsideration. It concluded that the parties had addressed the constitutionality of the fee schedules by referencing the circuit court decision in *Andary v USAA Casualty Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356487), aff'd in relevant part ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 164772), then pending before this Court. The trial court therefore found that State Farm's motion for reconsideration presented issues already ruled on and considered, and denied the motion. This appeal followed.

---

[2] The trial court decided this issue before this Court's decision in *Andary v USAA Casualty Ins Co*, ___ Mich App ___; ___ NW2d ___ (2022) (Docket No. 356487), aff'd in relevant part ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 164772), in which this Court held, in relevant part, that the amendments to the no-fault act did not apply retroactively to injuries that arose before July 1, 2021. The Michigan Supreme Court affirmed that aspect of the decision in *Andary v USAA Casualty Ins Co*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 164772).

While this case was pending on appeal, the Michigan Supreme Court decided *Andary v USAA Casualty Ins Co*, ___ Mich ___; ___ NW2d ___ (2023) (Docket No. 164772). There, our Supreme Court affirmed that MCL 500.3157(7) and (10) do not apply retroactively to alter the PIP benefits of those injured before the effective date of the amended statute. *Id*. at ___; slip op at 55.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision to grant a preliminary injunction for an abuse of discretion. *Pontiac Fire Fighters Union Local 376 v Pontiac*, 482 Mich 1, 8; 753 NW2d 595 (2008). A trial court abuses its discretion when it selects an outcome that falls outside the range of reasonable and principled outcomes. *Id*. Whether a party has been afforded due process is a constitutional issue we review de novo. *Elba Twp v Gratiot Co Drain Comm'r*, 493 Mich 265, 277; 831 NW2d 204 (2013). We also review de novo the construction and application of court rules. *True Care Physical Therapy, PLLC v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 362094); slip op at 3. And "[i]issues involving mootness are questions of law that are reviewed de novo." *Equity Funding, Inc v Village of Milford*, 342 Mich App 342, 348; ___ NW2d ___ (2022).

## III. MOOTNESS

Gedda argues that this appeal is moot because State Farm's request for this Court to reverse and vacate the trial court's injunction would have no impact on the case. He contends that, under *Andary*, ___ Mich at ___; slip op at 28, State Farm must pay for the services, regardless of our decision in this appeal. We disagree.

In *Equity Funding*, 342 Mich App at 349, this Court explained the purpose of the mootness doctrine:

> Judicial power pertains to the right of courts of proper jurisdiction to determine actual cases and controversies arising between adversaries. To ensure that the judiciary only exercises "judicial power" and does not usurp the power of other branches of government, Michigan courts and federal courts have developed justiciability doctrines, including mootness, to ensure that cases are appropriately before the court. If an issue is moot, the court may not adjudicate the claim. [Citations omitted.]

Courts must address mootness as it arises. *Id*. "An issue is moot when a subsequent event makes it impossible for this Court to grant relief. An issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Barrow v Detroit Election Comm*, 305 Mich App 649, 659; 854 NW2d 489 (2014). Courts will, however, review a moot issue "if it is publicly significant, likely to recur, and yet likely to evade judicial review." *In re Indiana Mich Power Co*, 297 Mich App 332, 340; 824 NW2d 246 (2012) (citation omitted).

This case is not moot for two reasons. First, the merits of Gedda's underlying claim are only one aspect of the analysis for determining whether the trial court abused its discretion when it granted the preliminary injunction. Though it relates to his likelihood of success on the merits, three other factors exist that courts consider when evaluating whether to issue a preliminary injunction. See *Sandstone Creek Solar, LLC v Benton Twp*, 335 Mich App 683, 706; 967 NW2d

890 (2021) (articulating the four relevant factors for determining whether to enter a preliminary injunction). Second, to the extent that Gedda argues that his apparently successful motion for partial summary disposition related to the fee issue and *Andary* renders this appeal moot, that argument is not properly before us. As State Farm points out, our review is limited to the trial court record at the time a party appeals unless they successfully move to expand the record. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). The order related to that motion is not a part of the record and Gedda did not move to expand the record on appeal. We therefore reject Gedda's mootness argument.

## IV. PROPRIETY OF THE PRELIMINARY INJUNCTION

State Farm argues that the trial court abused its discretion when it granted Gedda's request for a preliminary injunction. It specifically challenges the court's decision to grant the preliminary injunction without a hearing, argues that the injunction was unnecessary because SG had an adequate remedy at law (money damages), and asserts that the trial court's analysis of the factors relevant to determining whether to issue a preliminary injunction were incorrect. We disagree and address each argument in turn.

## A. HEARING REQUIREMENTS FOR GRANTING A PRELIMINARY INJUNCTION

State Farm argues that the trial court erred when it granted the preliminary injunction without holding a hearing. State Farm has waived this issue, but even if it had not, we disagree.

## 1. RAISE OR WAIVE

An issue must be raised in or decided by the trial court for it to be preserved for appeal. *Glasker-Davis v Auvenshire*, 333 Mich App 222, 227; 964 NW2d 809 (2020). "[I]ssue preservation requirements only impose a general prohibition against raising an issue for the first time on appeal." *Id*. State Farm did not challenge the trial court's failure to hold a hearing before granting the preliminary injunction, so the issue is unpreserved.

This Court has historically applied two different standards to unpreserved issues in the civil context: plain-error, see, e.g., *Mr Sunshine v Delta College of Trustees*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 358042); slip op at 2; *Demski v Petlick*, 309 Mich App 404, 426-427, 873 NW2d 596 (2015); *Kern v Blethen-Coluni*, 240 Mich App 333, 336; 612 NW2d 838 (2000), and the so-called "raise-or-waive" rule, see, e.g., *In re Conservatorship of Murray*, 336 Mich App 234, 240-242; 970 NW2d 372 (2021); *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 192-194; 920 NW2d 148 (2018) (applying the so-called raise-or-waive standard, but "acknowledg[ing] that decisions of our Supreme Court and this Court have applied the plain-error standard of review to certain unpreserved issues in the civil context"). Our Supreme Court has yet to state definitively which standard is the appropriate standard for the civil context. See *Shah*, 324 Mich App at 194 n 5 (noting that our Supreme Court has applied plain-error in certain civil contexts and declining to decide "under what circumstances the plain-error standard of review should be applied in the civil context"). But see *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359090); slip op at 2-5 (holding that our Supreme Court requires application of the so-called raise-or-waive standard).

But recently, a panel of this Court resolved this apparent conflict, holding that the plain-error test does not apply in civil cases, and appellate courts instead apply the raise-or-waive rule. See *Tolas*, ___ Mich App at ___; slip op at 2-5.  Regardless, this Court may still "overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented."  *Id*. at ___; slip op at 3 (quotation marks and citations omitted).  As a published decision, this Court is bound by *Tolas*. See MCR 7.215(C)(2).  As required by *Tolas*, the issue is waived.  See *id.* at ___; slip op at 2-5.

Of course, the so-called raise-or-waive rule has myriad exceptions.  See *Tolas*, ___ Mich App at ___; slip op at 3.  Though this issue is waived, there are sufficient facts in the record for us to overlook the preservation requirements and address the issue State Farm now raises.  See *id*.

## 2. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY GRANTING THE PRELIMINARY INJUNCTION WITHOUT A HEARING

State Farm argues that the trial court abused its discretion by granting a preliminary injunction without a hearing.  Though waived, we address and reject this argument.

MCR 3.310(A)(1) provides: "Except as otherwise provided by statute or these rules, an injunction may not be granted before a hearing on a motion for a preliminary injunction or on an order to show cause why a preliminary injunction should not be issued."  MCR 3.310(A)(1).  State Farm relies on *Fancy v Egrin*, 177 Mich App 714; 442 NW2d 765 (1989), and *Campau v McMath*, 185 Mich App 724; 463 NW2d 186 (1990), for the proposition that a trial court must hold a hearing before granting a preliminary injunction.  Both cases were decided before November 1, 1990, so neither is strictly binding on this Court.  See *Wells Fargo Rail Corp v Dep't of Treasury*, ___ Mich App ___, ___ n 2; ___ NW2d ___ (2022) (Docket No. 359399); slip op at 10 n 2.  See also MCR 7.215(C)(2) (published opinions issued prior to November 1, 1990 have precedential effect under the doctrine of stare decisis).  We also find their reasoning unpersuasive in light of the plain language of MCR 3.310(A)(1).  See *id*.

*Fancy* and *Campau* (the latter of which relies on the former) held that although a trial court need not hold an evidentiary hearing before issuing an injunction, some sort of hearing is required. See *Fancy*, 177 Mich App at 722 ("[W]e do not agree with [the] defendants' assertion that it is compulsory for a trial court to hold an evidentiary hearing before the issuance of a temporary injunction, [but] we do believe that some form of hearing is required"); *Campau*, 185 Mich App at 728 (same).  But both cases—and State Farm—ignore the plain language of MCR 3.310.  As stated, MCR 3.310(A)(1) provides: "*Except as otherwise provided by statute or these rules*, an injunction may not be granted before a hearing on a motion for a preliminary injunction or on an order to show cause why a preliminary injunction should not be issued."  MCR 3.310(A)(1).  This language indicates that MCR 3.310(A)(1) applies to the entirety of the procedures contained in the Michigan Court Rules, unless otherwise provided.  See *id*.  MCR 2.119(E)(3) states that "[a] court may, in its discretion, dispense with or limit oral argument on motions, and may require the parties to file briefs in support of and in opposition to a motion."

Here, the trial court dispensed with oral argument under MCR 2.119(E)(3), indicating it would decide the issue on the parties' briefs.  This was permissible under both MCR 2.119(E)(3)

and MCR 3.310(A)(1) when read together. That "an injunction may not be granted before a hearing on a motion for a preliminary injunction" under MCR 3.310(A)(1) is subject to what is "otherwise provided by statute or these rules," and MCR 2.119(E)(3) allows a court to dispense with oral argument and decide a motion on the briefs. Under these two rules, the trial court could therefore decide the preliminary-injunction issue on the briefs and without a hearing, and it did not abuse its discretion in doing so. Because the parties extensively briefed the preliminary-injunction issue and supported it with ample evidence, State Farm suffered no prejudice from cancelation of the hearing. See *Moskalik v Dunn*, 392 Mich 583, 588; 221 NW2d 313 (1974) (stating that "absent prejudice suffered by the complaining party attributable to the failure to observe the rule, reversal is not appropriate."). If it was error at all, the error was harmless.

## B. COMPLETE RELIEF AND ADEQUATE REMEDY AT LAW

State Farms next argues that the trial court abused its discretion issuing a preliminary injunction because the injunction granted SG complete relief. We disagree.

An injunction is an "extraordinary remedy that issues only when justice requires, there is no adequate remedy at law, and there exists a real and imminent danger of irreparable injury." *Pontiac Fire Fighters*, 482 Mich at 8 (quotation marks and citation omitted). "The purpose of a preliminary injunction is to preserve the status quo pending a final hearing regarding the parties' rights." *Hammel v Speaker of House of Representatives*, 297 Mich App 641, 647; 825 NW2d 616 (2012) (quotation marks and citation omitted). The status quo is the "last actual, peaceable, noncontested status which preceded the pending controversy." *Busuito v Barnhill*, 337 Mich App 434, 451; 976 NW2d 60 (2021) (quotation marks and citation omitted). The party seeking the preliminary injunction bears the burden of establishing that the preliminary injunction should issue. MCR 3.310(A)(4).

A court may not issue a preliminary injunction if the injunction will grant a party complete relief before a hearing on the merits. *Thermatool Corp v Borzym*, 227 Mich App 366, 376; 575 NW2d 334 (1998). See *Epworth Assembly v Ludington & N R*, 223 Mich 589, 596; 194 NW 562 (1923); *Bratton v Detroit Auto Inter-Ins Exch*, 120 Mich App 73, 79; 327 NW2d 396 (1982). In his complaint, Gedda requested backpay in excess of $200,000 for past-due invoices, 12% penalty interest under MCL 500.3142, attorney fees, and all amounts owed under MCL 500.3157 for ongoing and future services. The trial court only ordered State Farm to process and pay SG's in-home care invoices from July 2, 2021, until ordered otherwise by the court. The court did not, however, award the 12% penalty interest that State Farm allegedly owed under MCL 500.3157 or attorney fees. Nor did it order State Farm to pay for all future services. Instead, the trial court ordered State Farm to maintain the status quo during the pendency of the litigation. See *Hammel*, 297 Mich App at 647; *Busuito*, 337 Mich App at 451. The preliminary injunction therefore provided SG only partial, not complete, relief, and the trial court did not abuse its discretion by issuing the injunction.

State Farm also argues that the trial court abused its discretion issuing the preliminary injunction because SG had an adequate remedy at law: the purely economic recovery of benefits, interest under MCL 300.3142, and attorney fees. We disagree.

Contrary to State Farm's position, Gedda did not request a purely economic remedy in his request for a preliminary injunction. If State Farm stopped paying for SG's medical care or imposed the reduced reimbursement rate, SG would be unable to pay for that care and LHH would stop providing it. Rather than request monetary damages, Gedda asked for a preliminary injunction to preserve the status quo during the pendency of the underlying action. See *Hammel*, 297 Mich App at 647; *Busuito*, 337 Mich App at 451. Gedda did not have an otherwise adequate legal remedy during the pendency of this case because payment of damages at the end of the case would not have provided him the money he needed throughout the case to pay for the round-the-clock services SG required. In short, the economics of this case are directly tied to SG's health and ultimately his life. We therefore conclude that because SG did not have an otherwise adequate remedy at law, the trial court did not abuse its discretion by issuing the injunction.

## C. FACTOR ANALYSIS

State Farm argues that the factors courts consider when determining whether to grant a preliminary injunction weighed in favor of denying the injunction, and the trial court abused its discretion in concluding otherwise. We disagree.

In *Sandstone Creek Solar, LLC*, 335 Mich App at 706, this Court articulated the four factors a trial court may consider when deciding whether to grant the "extraordinary remedy" of a preliminary injunction. Those factors are: (1) whether the applicant has shown that "irreparable harm will occur without the issuance of an injunction," (2) "whether the harm to the applicant absent an injunction outweighs the harm an injunction would cause to the adverse party," (3) "whether the public interest will be harmed if a preliminary injunction is issued," and (4) "whether the applicant is likely to prevail on the merits . . . ." *Id*. These factors are a guide to the court's exercise of discretion; they are not rigid and unbending requirements. See *Johnson v Mich Minority Purchasing Council*, 341 Mich App 1, 25; 988 NW2d 800 (2022).

The party seeking an injunction must make "a particularized showing of irreparable harm" to obtain a preliminary injunction. *Pontiac Fire Fighters*, 482 Mich at 9 (quotation marks and citation omitted). "[A]n injunction will not lie upon the mere apprehension of future injury or where the threatened injury is speculative or conjectural." *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist (On Remand)*, 293 Mich App 143, 149; 809 NW2d 444 (2011) (quotation marks and citation omitted). The injury to the party seeking injunctive relief is evaluated in light of the totality of the circumstances affecting the party and the alternatives available to that party. *Id*.

### 1. IRREPARABLE HARM

The first factor courts consider when evaluating whether to enter a preliminary injunction is whether the applicant has shown that irreparable harm will occur without entry of the injunction. *Sandstone Creek Solar, LLC*, 335 Mich App at 706. Regarding this factor, State Farm argued below and maintains on appeal that SG faced only economic harm if the court did not issue a preliminary injunction. The trial court rejected this argument, finding that SG did not face mere economic harm. It found instead that SG faced irreparable harm to his health and safety, and that there is no injury more irreparable than lasting illness or death.

The trial court's decision is well within the range of reasonable and principled outcomes. See *Pontiac Fire Fighters*, 482 Mich at 8. Gedda presented evidence establishing that SG had a present need for specialized healthcare and that nonpayment of invoices would result in the loss of that healthcare. The injuries SG suffered in the 2011 accident rendered him a quadriplegic and required 24/7 care to maintain his health and well-being. SG's doctor, Dr. Gianna Rodriguez, indicated in her affidavit that without that level of care, SG faced serious illness or death. Gedda also presented evidence that LHH provided SG the care he required for many years and that State Farm generally paid for that care without issue. Since the accident, State Farm had generally paid a rate of $29.50 an hour and nursing care at a rate of $72.50 an hour. But in September 2021, it stopped paying for that care for several months. LHH could not continue providing care for SG after State Farm stopped paying invoices and then reduced its hourly rate of reimbursement to $16.89 an hour for high-tech care and $41.51 an hour for nursing care. The payments to LHH without reimbursement from State Farm depleted SG's trust to the point it could no longer advance payment for SG's care. SG's nurse case manager, Mercedes Bailey, contacted alternative service providers but could not find any that would provide the level of care required by SG. Gedda was similarly unaware of another service provider willing or able to take on SG's care.

This evidence established that State Farm's reduced reimbursement rates would lead LHH to stop providing services to SG at the level he required and that he had no other options available to him that would provide the same care at a reduced cost. Removing SG from LHH's care without comparable alternative providers risked his safety and would leave him to suffer unwarranted medical issues or even death. State Farm presented no evidence to the trial court to rebut Gedda's evidence demonstrating the harm to SG's life that he faced if State Farm continued not to pay the invoices during litigation.

State Farm argues, however, that the risk of harm to SG was purely economic and that this case is a mere rate dispute. It contends that PIP insurers do not provide healthcare and cannot remedy the unavailability of care to a PIP claimant. We reject this argument for two reasons. First, although State Farm does not directly provide healthcare services to SG, it contracted to cover his healthcare costs arising out of an automobile accident. State Farm asserts that it does not directly provide healthcare, but the evidence showed that without payment at the pre-amendment rates, LHH could no longer provide care to SG. So while State Farm itself may not provide healthcare services, it provided the means by which LHH could provide those services—continuing to pay the pre-amendment rate during the pendency of this case and until the court reached the merits of Gedda's claim. Second, this argument is undercut by *Andary*. There, the Michigan Supreme Court held that the 2019 amendments to the no-fault act do not retroactively apply to cap the PIP benefits of those injured before the effective date of the amendment. See *Andary*, ___ Mich at ___; slip op at 22. The court's issuance of a preliminary injunction thus preserved the status quo for the remainder of the litigation. See *Hammel*, 297 Mich App at 647; *Busuito*, 337 Mich App at 451. The trial court therefore did not abuse its discretion when it determined that SG faced irreparable harm—a potential threat to his life—from State Farm's reduction to the reimbursement rates.

2. WHETHER HARM TO APPLICANT WITHOUT INJUNCTION OUTWEIGHS HARM INJUNCTION WOULD CAUSE ADVERSE PARTY

The second factor is whether the harm to SG absent an injunction outweighs the harm the injunction would cause to State Farm. *Sandstone Creek Solar, LLC*, 335 Mich App at 706. The

trial court found that the risk of irreparable harm to SG's physical and mental health outweighed the possible economic harm that State Farm faced from entry of the injunction. State Farm argues, however, that the court incorrectly analyzed this factor, asserting that the harms at issue are purely economic and the economic harm it faced was more prejudicial than the economic harm that Gedda faced. This is—at best—a mischaracterization of the harm SG faced. State Farm asserted that it faced financial loss if the trial court ultimately determined that State Farm properly reduced payment for SG's healthcare and it was unable to recover the amount that it paid throughout the pendency of the underlying action. But this harm did not outweigh the harm to SG's life. The trial court therefore did not abuse its discretion by determining that the risk of harm that SG faced if the court did not enter the injunction outweighed the harm to State Farm if the court entered the injunction.

## 3. WHETHER PUBLIC INTEREST IS HARMED IF PRELIMINARY INJUNCTION ISSUED

The third factor is whether the public interest would be harmed if the preliminary injunction is issued. Though the trial court did not expressly state why this factor favored granting the injunction, it explicitly discussed two of the other factors, implicitly decided another, and found that they favored SG. Because the factors are a guide to the trial court's exercise of discretion, not rigid and unbending requirements, its failure to discuss this third factor did not render its decision an abuse of discretion. See *Johnson*, 341 Mich App at 25. Regardless, we conclude that this factor favors issuance of the injunction. Individuals pay for insurance expecting their insurer to cover their healthcare costs. The public therefore has an interest in individuals receiving the healthcare they contracted for and paid to receive. See, e.g., *Cudnik v William Beaumont Hosp*, 207 Mich App 378, 386-387; 525 NW2d 891 (1994) (explaining that the public had great interest in the performance of highly necessary medical services in the context of enforcing a hospital's exculpatory agreement).

## 4. LIKELIHOOD OF SUCCESS ON THE MERITS

The final factor asks whether the injunction applicant is likely to prevail on the merits. *Sandstone Creek Solar, LLC*, 335 Mich App at 706. State Farm argues that the fee schedule introduced in the 2019 amendment to the no-fault act applies retroactively. These arguments about the likelihood-of-success-on-the-merits factor are foreclosed by *Andary*, which was decided after this Court granted leave to appeal in this case. There, as discussed, our Supreme Court held in relevant part that MCL 500.3157(7) and (10) do not apply retroactively to alter the PIP benefits of individuals injured before the effective date of the amended no-fault act. *Andary*, ___ Mich at ___; slip op at 22. Though the trial court did not specifically address this factor, it concluded that each of the four relevant factors supported granting the injunction. It also found—before this Court and the Supreme Court addressed the issue—that the fee schedule did not apply retroactively to SG's 2011 injuries. And although *Andary* had not been decided at the appellate level when the trial court rendered its decision here, both our Court's decision and the Supreme Court's demonstrate that the trial court's decision was not outside the range of reasonable and principled outcomes. *Pontiac Fire Fighters*, 482 Mich at 8. The trial court therefore did not abuse its discretion when it determined that Gedda established a likelihood of success on the merits because MCL 500.3157 did not apply retroactively to individuals injured before the effective date of the amended no-fault act.

We conclude that the trial court did not abuse its discretion when evaluating the four relevant factors for issuing an injunction. It therefore did not abuse its discretion when it granted a preliminary injunction to maintain the status quo with respect to the reimbursement rates, a decision that helped preserve SG's access to necessary medical care during the pendency of Gedda's claim against State Farm. Accordingly, State Farm is not entitled to relief on this issue.

## V. DUE PROCESS

State Farm argues that the trial court violated its due-process rights when the court sua sponte determined that the fee schedule in the recently-amended MCL 500.3157 was unconstitutional and denied reconsideration of this issue. We disagree.

"Courts examine procedural due process questions in two steps: first, we ask whether the State has interfered with a protected liberty or property interest; second, we inquire whether the procedures leading to the deprivation of that interest were constitutionally sufficient." *SIXARP, LLC v Twp of Byron*, ____ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 361888); slip op at 13 (quotation marks and citations omitted). "Regarding the first question, the liberty and property interests for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than an abstract need or desire, and must be based on more than a unilateral hope . . . ." *Duckett v Solky*, 341 Mich App 706, 721; 991 NW2d 852 (2022). An individual claiming a protected interest must instead "have a legitimate claim of entitlement to it." *Id*. (quotation marks and citation omitted). "Regarding the second question, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *SIXARP, LLC*, ___ Mich App at ___; slip op at 13 (quotation marks, citation, and brackets omitted).

"Where a court considers an issue sua sponte, due process can be satisfied by affording a party an opportunity for rehearing." *Al-Maliki v LaGrant*, 286 Mich App 483, 485-486; 781 NW2d 853 (2009). See *Equity Funding*, 342 Mich App at 350 (holding that the plaintiff had the opportunity to argue an issue the defendant raised for the first time in its reply brief in support of a dispositive motion when the plaintiff moved for reconsideration and the trial court considered the motion); *Boulton v Fenton Twp*, 272 Mich App 456, 463-464; 726 NW2d 733 (2006) (rejecting the plaintiff's argument that the trial court granted summary disposition without giving the plaintiff an adequate opportunity to brief an issue and holding that any error committed by the trial court was harmless where the plaintiff presented his arguments in a motion for reconsideration and the record indicated that the trial court thoroughly considered the arguments before ruling on the motion).

State Farm contends that the trial court sua sponte found that the new fee schedule in the no-fault act was unconstitutional. We disagree. In his motion for a preliminary injunction, Gedda referenced the no-fault reforms and that the new fee schedules were "the subject of great debate and being challenged as unconstitutional." In support of that, Gedda referenced *Andary*, then pending before this Court. State Farm responded, arguing that Gedda's "various challenges to the application" of the amendments and fee schedule were "highly likely to fail on the merits, just as similar arguments did before the Ingham, Kent, and Wayne Circuit Courts." State Farm attached several opinions and orders from those courts, including the *Andary* circuit court opinion and order. That order includes analysis from the *Andary* circuit court about the constitutionality of the fee schedules. The trial court's decision to address the constitutionality of the fee schedule was

-11-

therefore not without prompting or suggestion, or of its own accord—the parties, including State Farm, put the issue before the court. See *Black's Law Dictionary* (11th ed) (defining "sua sponte" as "[w]ithout prompting or suggestion" and as Latin for " 'of one's own accord; voluntarily"").

Afterward, the trial court here had essentially three options: (1) disregard the circuit court orders referenced by State Farm, (2) credit them and conclude that the fee schedules were constitutional, or (3) disagree with them and arrive at the opposite conclusion—that the fees schedules were unconstitutional. State Farm likely hoped for one of the first two options, but the trial court chose the third. Though the constitutionality of the fee schedule may not have been extensively briefed by the parties, State Farm nonetheless put the issue before the court when it attached the *Andary* circuit court decision to its responsive brief. We therefore reject its contention that the trial court raised this issue sua sponte.

But even if the court raised this issue sua sponte, State Farm's argument that the trial court denied it an opportunity to be heard on the constitutionality of the fee schedule is not supported by the record. The trial court found that the new fee schedule in the no-fault act was unconstitutional and, as part of the same order, granted a preliminary injunction to Gedda and SG. State Farm then moved for reconsideration. In its supporting brief, State Farm argued that the trial court deprived it of due process when it sua sponte declared the fee schedules unconstitutional. The trial court denied reconsideration, finding that both parties had "addressed the constitutionality issue" by referencing *Andary* (then-pending on appeal before this Court). The court indicated that it found Gedda's arguments on this issue persuasive and relied on them when it found that "applying the modification to MCL 500.3157 retroactively [was] unconstitutional," which "ma[de] the new fee schedule unconstitutional." The trial court therefore found that State Farm had "merely present[ed] the same issues ruled on, and taken into consideration, by [the court]" and concluded that State Farm had failed to demonstrate palpable error and denied reconsideration. Accordingly, the court afforded State Farm an opportunity to be heard on the issue, so we reject its due-process argument.

State Farm chose not to address the constitutionality of the fee schedule in its motion for reconsideration, instead arguing that the trial court deprived it of that opportunity and requesting additional briefing. Its motion for reconsideration *was that opportunity* to be heard on the fee-schedule issue and for additional briefing. See *Equity Funding*, 342 Mich App at 350; *Al-Maliki*, 286 Mich App at 485-486; *Boulton*, 272 Mich App at 463-464. Though the trial court did not explicitly state the basis for finding the fee schedule unconstitutional, State Farm—having provided the court a copy of the *Andary* circuit court opinion—was on notice of the constitutional issues surrounding this case. It could have used its motion for reconsideration to address those arguments and others, but it did not. State Farm's failures do not mean the trial court denied it due process.

We affirm. Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado