*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

TRINITY VILLAGE LLC,

           Plaintiff,

and

DANA LYVETTE GLENN,

           Plaintiff-Appellant,

v

BRADBY TOWNHOMES CONDOMINIUM
ASSOCIATION,

           Defendant-Appellee.

UNPUBLISHED
June 18, 2026
11:51 AM

No. 372622
Wayne Circuit Court
LC No. 23-001065-CH

---

Before: GADOLA, C.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

In this action for breach-of-contract, tortious interference with a business expectancy (tortious interference), and a violation of the Condominium Act, MCL 559.101 *et seq*., plaintiff, Dana Lyvette Glenn, proceeding *in propria persona*, appeals as of right the trial court's order granting defendant, Bradby Townhomes Condominium Association, summary disposition under MCR 2.116(C)(7) (statute of limitations), MCR 2.116(C)(8) (failure to state a claim), and MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

This case involves the parties' dispute over a lien placed by defendant on plaintiff's condominium.[1]  Defendant operated Bradby Townhomes in Detroit, Michigan.  Defendant's bylaws authorized it to impose annual and special assessments.  Any unpaid assessment would "constitute a lien against" an owner's unit.  The bylaws stated: "Upon the sale or conveyance of a [u]nit, all unpaid assessments, interest, [and] late charges . . . against the [u]nit shall be paid out of the sale price or by the purchaser . . . ."

Defendant filed an action in the 36th District Court in December 2010 to recover unpaid assessments.  The district court entered a judgment against plaintiff in June 2011.  Plaintiff and defendant's president signed a mutual release, dated October 16, 2014, in which plaintiff agreed to pay $7,500 to satisfy the district court judgment.  Defendant agreed to "release and forever discharge" plaintiff from "any and all past, present or future claims, . . . which [defendant] now or [sic] holds or have at any time heretofore or held against [plaintiff] arising out of . . . any and all . . . assessments levied against [plaintiff] with respect to the property."  Plaintiff similarly agreed to "release and forever discharge [defendant], from any and all claims[] . . . which she now has or may have ever held against [defendant] arising from the occupancy of the above mentioned property . . . ."  Defendant continued to assess association dues and delinquent charges after the parties signed the release, starting in 2015.  Plaintiff's first payment after the release was in March 2015.

In June 2019, plaintiff conveyed her condominium unit to plaintiff, Trinity Village LLC, of which she was the sole member and manager, by a quitclaim deed.[2]  In November 2020, defendant filed a notice of lien on plaintiff's condominium for $2,364 in unpaid fees and assessments.  Plaintiff's account statement indicated her balance on that date was $2,364.[3]  On June 22, 2021 plaintiff paid $2,370 and then requested on July 12, 2021 that the property manager let her know when the lien would be removed.[4]  On July 15, 2021, Trinity Village LLC entered into an escrow agreement with Liberty Title Agency, Inc., as part of Trinity Village LLC's sale of plaintiff's condominium.  Trinity Village LLC and the purchaser agreed to hold $6,000 with Liberty Title "from Seller's proceeds to obtain HOA lien release payoff or discharge . . . ."  The purchaser could not take possession of the condominium until the $6,000 was disbursed.  On July 29, 2021, defendant charged plaintiff $1,664 for a "[r]oofing [a]ssessment [b]alance" from 2020

---

[1] The parties stipulated to dismiss plaintiff, Trinity Village LLC, from this matter without prejudice.  Because Trinity Village LLC is not a party to this appeal, we will refer to Glenn singularly as plaintiff.

[2] For clarity, and because plaintiff solely managed Trinity Village LLC, we will continue to refer to the condominium unit in this matter as plaintiff's condominium.

[3] Plaintiff claimed she did not receive notice of the November 2020 lien.

[4] Although plaintiff's payment of $2,370 covered the lien amount of $2,364 there was still a balance of $610 on her account.

to 2023.  Plaintiff paid the $1,664 on the same day.[5]  Plaintiff indicated, in July 2022 and December 2022 e-mails to one of Liberty Title's escrow officers, that she was working with her attorney to release the November 2020 lien.

Plaintiff filed her complaint on January 24, 2023, alleging defendant refused to release the November 2020 lien and the $6,000 remained in escrow with Liberty Title.  Plaintiff claimed defendant's refusal to release the lien tortiously interfered with the escrow agreement between Trinity Village LLC and Liberty Title.  Plaintiff argued the parties released her from liability for past and future assessments.  She claimed defendant breached the release by failing to discharge her balance before the release and continuing to charge assessments and late fees.  Finally, plaintiff alleged defendant violated the Condominium Act by charging her for the 2020 to 2023 roofing assessments and representing to Liberty Title that she owed the assessments.

Defendant moved for summary disposition, first arguing it did not tortiously interfere with the escrow agreement, because plaintiff willingly entered into the agreement without asking defendant to release its lien.[6]  Regarding plaintiff's breach-of-contract claim, defendant asserted it did not breach the release because the release did not relieve plaintiff of her obligation to pay future assessments.  Defendant further argued plaintiff's claim accrued when she started paying defendant for assessments in 2015, so the claim was barred by the statute of limitations.  Finally, defendant asserted it did not violate the Condominium Act because its bylaws authorized it to charge assessments and take unpaid assessments out of the condominium's sale price.

The trial court granted defendant summary disposition and dismissed plaintiff's claims.  First, the trial court ruled plaintiff could not "sustain a claim of tortious interference[,]" because defendant did not interfere with the escrow agreement into which plaintiff willingly entered.  The trial court did not specify the ground for granting defendant summary disposition on the tortious-interference claim.  Second, the trial court ruled defendant was not barred from collecting assessments after the parties' release.  Regardless, plaintiff's breach-of-contract claim accrued in 2015 and was barred by the six-year statute of limitations.  Third, the trial court ruled there was no evidence that defendant violated the Condominium Act, because defendant could take unpaid assessments out of the condominium's sale price under its bylaws.

Plaintiff moved to amend her complaint "to clarify [her] claims for breach of contract and to include additional factual allegations."  Her proposed amended complaint added four claims, alleging defendant breached the release by filing liens on plaintiff's condominium in May 2014, March 2017, and December 2017 and garnishing plaintiff's wages.[7]  Plaintiff asserted the amended breach-of-contract claims were not futile because they were based on additional factual allegations.

---

[5] Plaintiff claimed she was charged the roofing assessment for 2020 twice, having been charged a 2020 roofing assessment on December 31, 2020.

[6] Defendant did not specify the ground for summary disposition of plaintiff's tortious-interference claim.  Plaintiff does not challenge the trial court's decision based on defendant's failure to specify the ground for summary disposition.

[7] Plaintiff attached an assignment to her amended complaint, indicating Trinity Village LLC assigned its claims against defendant to plaintiff on June 27, 2024.

Plaintiff next moved for reconsideration, arguing the trial court erroneously dismissed her breach-of-contract, tortious-interference, and Condominium-Act claims. The trial court denied reconsideration, ruling plaintiff presented the same issues already ruled on and did not demonstrate any palpable error. Plaintiff now appeals.

## II. SUMMARY DISPOSITION—BREACH OF CONTRACT

Plaintiff argues the trial court erroneously granted defendant summary disposition by ruling her breach-of-contract claim was barred by the statute of limitations. We disagree.

### A. STANDARD OF REVIEW

This Court reviews a trial court's grant of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Plaintiff challenges the trial court's grant of summary disposition under MCR 2.116(C)(7). Summary disposition is appropriate when a plaintiff's claim is barred by a statute of limitations. *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220, 227; 859 NW2d 723 (2014) (citation omitted). When reviewing a motion for summary disposition under MCR 2.116(C)(7), the reviewing court must consider all documentary evidence, accept the nonmoving party's well-pleaded allegations as true, and construe the allegations in the nonmoving party's favor. *Id.* (quotation marks and citations omitted). This Court reviews issues of contractual interpretation de novo. *Trader v Comerica Bank*, 293 Mich App 210, 215; 809 NW2d 429 (2011) (citation omitted).

### B. DISCUSSION

The trial court did not err by dismissing plaintiff's breach-of-contract claim because the claim was barred by the applicable six-year statute of limitations.

Plaintiff alleged defendant breached the parties' release by continuing to collect assessments before the release and charging plaintiff for assessments after the release. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014) (footnote omitted). Under MCL 600.5807(1), a plaintiff is barred from bringing a breach-of-contract claim "unless, after the claim first accrued to the person . . . , the person commences the action within the applicable" statute of limitations. The statute of limitations for a general breach-of-contract claim is six years. MCL 600.5807(9).

The trial court properly granted summary disposition under MCR 2.116(C)(7) because plaintiff filed her breach-of-contract claim more than six years after her claim accrued. Our Supreme Court indicated the six-year statute of limitations "begins to run when the promisor fails to perform under the contract." *Miller-Davis*, 495 Mich at 180 (quotation marks and footnote omitted). In this matter, plaintiff argued defendant should have reduced her outstanding balance to zero and not charged additional assessments after the parties signed the release in October 2014. However, defendant continued to charge association dues during 2015 and did not zero out plaintiff's account balance. Plaintiff made her first dues payment in March 2015. The trial court did not err by ruling plaintiff's claim accrued in 2015. Plaintiff argues she did not receive the release until July 2017 and defendant demanded new terms to resolve her previous unpaid

assessments. Plaintiff presented no evidence for these claims in the trial court. She also signed the release, which was dated October 16, 2014. Because plaintiff filed her breach-of-contract claim in 2023, more than six years after the claim accrued in 2015, her claim was barred by the statute of limitations.

## III. SUMMARY DISPOSITION—TORTIOUS INTERFERENCE

Plaintiff argues the trial court erroneously granted defendant summary disposition by ruling defendant did not tortiously interfere with any business expectancy. We disagree.

## A. STANDARD OF REVIEW

Initially, neither defendant nor the trial court specified the applicable ground for granting defendant summary disposition on plaintiff's tortious-interference claim. This Court addresses a motion for summary disposition as decided under MCR 2.116(C)(10) if the trial court's decision "necessarily involved considering material outside the pleadings." *Jawad A Shah, MD, PC v State Farm Mut Auto Ins Co*, 324 Mich App 182, 207; 920 NW2d 148 (2018) (citation and footnote omitted). By ruling plaintiff "willingly and voluntarily entered into the escrow agreement . . . with full knowledge of the lien[,]" the trial court considered material outside the pleadings related to plaintiff's knowledge of defendant's lien. We address the dismissal of plaintiff's tortious-interference claim under MCR 2.116(C)(10).

"A motion [for summary disposition] under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden*, 461 Mich at 120. "All well-pleaded allegations are viewed in the light most favorable to the nonmoving party unless documentary evidence is provided that contradicts them." *Haksluoto v Mt Clemens Regional Med Ctr*, 500 Mich 304, 309; 901 NW2d 577 (2017) (citation omitted). If the movant meets the initial burden of supporting their position through documentary evidence, the burden shifts to the nonmovant to establish a genuine issue of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (citation omitted).

"Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Maiden*, 461 Mich at 120 (citations omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003) (citations omitted). "A court may not make findings of fact; if the evidence before it is conflicting, summary disposition is improper." *Piccione v Gillette*, 327 Mich App 16, 19; 932 NW2d 197 (2019) (quotation marks and citation omitted; emphasis omitted).

## B. DISCUSSION

The trial court properly granted summary disposition on plaintiff's tortious-interference claim because defendant did not interfere with any business expectancy.

The elements of tortious interference in this matter are: "[1] the existence of a valid business . . . expectancy, [2] knowledge of the . . . expectancy on the part of the defendant, [3] an intentional interference by the defendant inducing or causing a breach or termination of the . . . expectancy, and [4] resultant damage to the plaintiff." *Dalley v Dykema Gossett*, 287 Mich App

296, 323; 788 NW2d 679 (2010) (citation omitted). The third element of intentional interference is not satisfied if the defendant "was motivated by legitimate business reasons . . . ." *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 78; 919 NW2d 439 (2018) (quotation marks and citation omitted). "[T]he plaintiff must demonstrate . . . affirmative acts by the defendant that corroborate the improper motive of the interference." *Dalley*, 287 Mich App at 324 (quotation marks and citation omitted).

Plaintiff alleged defendant tortiously interfered with the escrow agreement between Trinity Village LLC and Liberty Title by failing to release its November 2020 lien. The trial court properly dismissed this claim because plaintiff did not corroborate defendant's alleged improper motive with any affirmative acts. A plaintiff must allege "specific and affirmative acts" the defendant intentionally committed to interfere with a business expectancy. *Hope Network Rehab Servs v Mich Catastrophic Claims Ass'n*, 342 Mich App 236, 248; 994 NW2d 873 (2022) (citation omitted). Defendant filed a notice of lien on plaintiff's condominium for $2,364 in unpaid fees and assessments in November 2020. The amount of the lien matched plaintiff's outstanding balance. According to plaintiff, defendant, by failing to release the lien, forced plaintiff to enter into an escrow agreement and prevented her from closing the sale of her condominium. Defendant was not a party to the escrow agreement and plaintiff presented no evidence defendant knew about the agreement. Further, plaintiff claimed defendant refused to release the lien on her request but never provided any evidence that defendant refused to release the lien. Plaintiff's unpaid assessments allowed defendant to file a notice of lien on her condominium, and plaintiff presented no evidence of any affirmative acts showing defendant's improper motive. The trial court did not err by granting defendant summary disposition and dismissing plaintiff's tortious-interference claim.

## IV. SUMMARY DISPOSITION—CONDOMINIUM ACT

Plaintiff argues the trial court erroneously granted defendant summary disposition by ruling plaintiff did not establish a violation of the Condominium Act. We disagree.

## A. STANDARD OF REVIEW

Plaintiff challenges the trial court's grant of summary disposition under MCR 2.116(C)(8) and MCR 2.116(C)(10). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the claim." *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). This Court reviews a trial court's grant of summary disposition under MCR 2.116(C)(8) de novo. *Bailey*, 494 Mich at 603. When a trial court considers a (C)(8) motion, it "must accept all factual allegations as true, deciding the motion on the pleadings alone." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019) (citation omitted). "All well-pleaded factual allegations are . . . construed in a light most favorable to the nonmovant." *Maiden*, 461 Mich at 119 (citation omitted). A (C)(8) motion may only be granted when a claim is "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

## B. DISCUSSION

The trial court properly granted summary disposition on plaintiff's Condominium-Act claim because plaintiff did not show defendant violated its bylaws.

Plaintiff claims defendant improperly charged her out of the sale price of her condominium for assessments she previously paid or were not due at the time of sale. Under the Condominium Act, the condominium bylaws govern the administration of a condominium project. *Tuscany Grove Ass'n v Peraino*, 311 Mich App 389, 393; 875 NW2d 234 (2015) (citation omitted). A co-owner of a condominium unit is required to comply with the bylaws. MCL 559.165. MCL 559.207 authorizes a co-owner to sue a condominium association "to enforce the terms and provisions of the condominium documents." This Court interprets condominium bylaws according to the rules of contract interpretation. *Tuscany Grove Ass'n*, 311 Mich App at 393 (citation omitted). Defendant's bylaws authorized it to impose assessments, which would "constitute a lien against" an owner's unit if the owner did not pay. The bylaws authorized defendant to collect the amount of any unpaid assessments out of the sale price of a condominium unit.

The trial court did not err by granting defendant summary disposition because plaintiff did not show defendant violated its bylaws or the Condominium Act. Plaintiff alleged defendant improperly charged her for assessments she already paid and assessments that were not due at the time of sale, but cited no provision of the bylaws or Condominium Act that defendant allegedly violated. As stated, defendant filed a notice of lien for $2,364 in unpaid assessments, which matched plaintiff's outstanding balance, in November 2020. When Trinity Village LLC was about to sell plaintiff's condominium in July 2021, plaintiff, as Trinity Village LLC's manager, agreed to hold $6,000 in escrow before closing. That amount would be taken "from [Trinity Village LLC]'s proceeds to obtain" release of the November 2020 lien. The $6,000 amount plaintiff agreed to hold in escrow was more than her outstanding balance at the time of the lien and the escrow agreement. Plaintiff argues defendant improperly charged her $1,664 for roofing assessments from 2020 to 2023, but she points to no provision in the bylaws that prevented defendant from charging her for these assessments. The trial court did not err by dismissing plaintiff's Condominium Act claim and ruling defendant did not violate its bylaws.

## V. AMENDING COMPLAINT

Finally, plaintiff argues this Court should remand to allow her to amend her complaint by adding breach-of-contract claims. We disagree.

## A. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion to amend a pleading for an abuse of discretion. *Forton v St Clair Co Pub Guardian*, 339 Mich App 73, 82; 981 NW2d 103 (2021) (citation omitted). "A trial court abuses its discretion when it chooses an outcome falling outside the range of reasonable and principled outcomes, or when it makes an error of law." *Id*. (quotation marks and citation omitted). This Court reviews questions of law, including the interpretation of court rules, de novo. *Sanders v McLaren-Macomb*, 323 Mich App 254, 265; 916 NW2d 305 (2018) (citation omitted).

## B. DISCUSSION

We decline plaintiff's request for a remand to amend her complaint because her proposed amended claims would be futile.

When a trial court grants a motion for summary disposition under MCR 2.116(C)(8) or 2.116(C)(10), MCR 2.116(I)(5) requires the trial court to give the adverse party "an opportunity to amend their pleading[] . . . ." This Court has held that "[a] motion to amend should ordinarily be denied only for particularized reasons . . . ." *Shah*, 324 Mich App at 208. (quotation marks and citation omitted). These reasons include: "undue delay, bad faith or a dilatory motive, . . . undue prejudice to the opposing party, or futility." *Id*. (quotation marks and citation omitted). "The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal *unless the amendment would be futile*." *Id*. (quotation marks and citation omitted; emphasis added). An amended pleading is futile "if (1) ignoring the substantive merits of the claim, it is legally insufficient on its face[] . . . ; (2) it merely restates allegations already made; or (3) it adds a claim over which the court lacks jurisdiction . . . ." *PT Today, Inc v Comm'r of Office of Fin & Ins Servs*, 270 Mich App 110, 143; 715 NW2d 398 (2006) (citations omitted).

Plaintiff moved to amend her complaint to add four breach-of-contract claims. First, plaintiff claimed defendant breached the parties' release by garnishing $8,314.05 in plaintiff's wages in 2015. Second, plaintiff alleged defendant executed a lien in May 2014 based on $16,762.94 in unpaid assessments, which defendant refused to release until January 2021. Third, plaintiff alleged defendant executed a lien in March 2017, which defendant refused to release until January 2021, based on unpaid assessments by another individual who had no interest in plaintiff's condominium. Fourth, plaintiff alleged that defendant breached the release by executing a lien in December 2017 for $19,352 in unpaid assessments.

Each of plaintiff's proposed breach-of-contract claims are futile and legally insufficient on their face.[8] Plaintiff's claim that defendant improperly garnished her wages in 2015 would be barred by the statute of limitations. As stated, the statute of limitations for a general breach-of-contract claim is six years, which "begins to run when the promisor fails to perform under the contract." *Miller-Davis*, 495 Mich at 180 (quotation marks and footnote omitted). Plaintiff's original breach-of-contract claim accrued when defendant began charging her for assessments after the release. Similarly, the first amended claim would have accrued when defendant allegedly garnished plaintiff's wages in 2015 to cover unpaid assessments.[9] Because the six-year statute of limitations would bar plaintiff's claim for improper garnishment, amendment to add that claim would be futile. Next, plaintiff's remaining breach-of-contract claims are legally insufficient because plaintiff presented no evidence indicating defendant breached the parties' release. "A

---

[8] The trial court denied plaintiff's motion for reconsideration but did not rule on her motion to amend her complaint. Although the trial court did not deny leave to amend, a trial court need not specify any reasons for denying leave if an amendment would be futile. *Shah*, 324 Mich App at 208 (quotation marks and citation omitted).

[9] Plaintiff also presented no evidence any such garnishment actually occurred because her account statement recorded no payment totaling $8,314.05 in 2015.

party asserting a breach of contract must establish . . . that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis*, 495 Mich at 178 (footnote omitted). Plaintiff claimed defendant breached the release and caused her damages by filing three liens in May 2014, March 2017, and March 2018 and refusing to release them until January 2021. Plaintiff attached copies of the three liens but never demonstrated she requested defendant to release the liens or that defendant refused to do so. Plaintiff's claims that she suffered damages from defendant's alleged refusal to discharge the three liens until January 2021 are legally insufficient. We decline to remand so plaintiff can amend her complaint because her proposed breach-of-contract claims are futile.

Affirmed.


/s/ Michael F. Gadola
/s/ Michael J. Riordan
/s/ Anica Letica